[No. 3898.    Decided June 1, 1901.]

THE STATE OF WASHINGTON on the Relation of J. H. Smith, Respondent, v. GRANT NEAL, as Auditor of Skagit County, et al., Appellants.

COUNTY  OFFICERS — SALARIES — MEASUREMENT  BY  POPULATION — FEDERAL CENSUS AS EVIDENCE.

Under art. 5, § 11, of the constitution, which requires the legislature, by general laws, to regulate the compensation of county officers, in proportion to their duties, and for that purpose to classify the counties by population; and under Laws 1889-90, p. 302, classifying counties, which puts those having between 14,000 and 16,000 population in the thirteenth class; and under Laws 1895, p. 409, which fixes the annual salary of county clerks in counties of the thirteenth class at $1,500; it is the duty of the county commissioners, in the absence of any law pointing out how population should be ascertained, to determine the fact by proof, and for this purpose the most recent federal census is competent evidence; hence mandamus will lie to compel the proper officers to allow the claim of a county clerk for an increase in compensation, where the proof shows that, prior to his term of office, the federal census of 1900 showed that his county had been raised to a class entitling its officers, under

the law, to a higher rate of compensation. (Fullerton and Mount, JJ., dissent).

Appeal from Superior Court, Skagit County.—Hon. GEORGE A. JOINER, Judge. Affirmed.

*M. P. Hurd,* Prosecuting Attorney, for appellants.

*Henry McBride,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is a mandamus proceeding originally commenced in the superior court of Skagit county, by J. H. Smith, the duly elected, qualified, and acting county clerk of said county, against Grant Neal, the auditor of said county, and the board of county commissioners, to compel said board to allow a certain claim alleged to be due the relator for his salary as county clerk of said county, and said auditor to draw a warrant for the same. The claim is for salary from the 14th day of January, 1901, on the basis that the population of said county at the time of the presentation of the claim was 14,727, as shown by the federal census for 1900, and that the county is, therefore, in the thirteenth class under the provisions of the act of March 26, 1890 (Session Laws 1889-90, p. 302). The respondent had judgment in his favor in the court below.

The provisions of the constitution are mandatory. Art. 1, §29. The legislature shall fix the compensation by salaries of all county officers. The salary of any county officer so fixed shall not be increased or diminished *after his election,* or during his term of office. Constitution, art. 11, §8. The legislature, by general and uniform laws, shall provide for the election of county officers "as public convenience may require, and shall prescribe their duties and fix their terms of office. *It shall regulate the compen-*

*sation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population."* Constitution, art. 11, § 5. By general laws the legislature has provided for the election of county clerks, and has prescribed their duties. They are elected for the term of two years, in November of the even years, and their term of office commences on the second Monday in January following. The constitution declares that their compensa- tion shall be regulated *in proportion to their duties,* and, to determine that proportion, the legislature may classify the counties by population. The first classification of counties by population was made by the legislature in the act of March 26, 1890 (Session Laws 1889-90, p. 302); and this act remained in force until the act of March 18, 1901 (Session Laws 1901, p. 289). By the first classifica- tion it is provided that counties with a population of four- teen thousand and under sixteen thousand shall be in the thirteenth class. The salary of the county clerk in coun- ties of the thirteenth class was, under the law of 1895, $1,500 (Session Laws 1895, p. 409). Under the law of March 26, 1890, in counties of the thirteenth class the county clerk was to receive an annual salary of $1,800. This salary was reduced by the act of 1895. But, while the legislature amended the act in this particular, nothing was done as to the mode of ascertaining the population. By the amendment of the salary provisions of the act of March 26, 1890, in 1895, the legislature clearly indicated that it regarded the act of March 26, 1890, as a compliance with § 5, art. 11, of the constitution, relative to the class- ification of counties in order to fix the salaries of county officers. The first paragraph of § 1 of the act of March 26, 1890, reads as follows:

"For the purpose of regulating the compensation of county officers herein provided for, the several counties of

this state are hereby classified according to their popula-
tion as will be ascertained by the federal census of 1890,
and thereafter every two years by the county or precinct
assessor's enumeration of the census of the different coun-
ties of this state as follows, to-wit."

When this act was adopted, the law provided that the
assessors should biennially take a census of the inhabitants
of their respective counties. In 1893 the law requiring
a biennial census was repealed. The first classification of
counties was determined by the federal census of 1890.
It is claimed that, because there is now no means provided
for the biennial ascertainment of the population of the
counties, such as existed when the act of March 26, 1890,
was enacted, therefore the counties must remain in the
same classes they were classified in, prior to the repeal of
the act for biennial enumeration of the population by the
assessor. The provision of the constitution is imperative
that the compensation of officers shall be in proportion to
their duties, and those duties shall be measured by the
population they serve. The population of a county in a
new state is not supposed to remain stationary. The leg-
islature, by the act of 1895, has said that, where the popu-
lation exceeds fourteen thousand and is under sixteen
thousand, the county clerk shall be paid $1,500 per annum.
The mere fact that the legislature has failed to point out
the means of ascertaining the population should not defeat
the plain provisions of the law and the mandates of the
constitution. Biennial selections of officers are provided
for, and the constitution recognizes the fact that the
salaries of officers may be increased or diminished; and
the legislature, following out the commands of the con-
stitution, has established a rule based on population by
which salaries of officers are to be determined. Section
10, art. 4, of the constitution provides that in incorporated
cities or towns having more than five thousand inhabitants

the justices of the peace shall receive such salary as may be
provided by law. An act of the legislature passed in 1891
provided that justices of the peace in incorporated cities
and towns of the third class having more than five thou-
sand inhabitants, *as shown by the last state or federal
census,* should receive an annual salary of $1,200. New
Whatcom was not an incorporated city at the time the
federal census was taken. There was no provision of law
for taking a state census of the city. This court said:

"It seems to us that under this constitutional provision
it becomes a fixed fact that cities or towns having more
than five thousand inhabitants are entitled to salaried
justices of the peace; that that fact and the ascertainment
of it is directed to the court and not to the legislature; that
to the legislature was directed the fixing of the salary,
and the legislature in this instance has fixed the salary
under the power given to it by the constitution. . . .
In this instance the enactment of the legislature might
absolutely destroy the right conferred by the constitution.
The legislature has not seen fit to provide for the state
census, so that under the statute law as it exists the only
means of ascertainment of the population of the city is the
federal census, which is taken only every ten years. It
might very reasonably occur that a city which did not
have quite the requisite five thousand population at the
time of the taking of the federal census in 1890 might
within six months or a year have the requisite population,
and yet this fact could not receive a judicial determination
or announcement for the period of nine or ten years, so
that, if the law should receive this construction, its effect
would be to destroy or limit the right which the constitution
gave. The test provided for by the legislature must be a
reasonable one—one which would carry into effect the
constitutional guarantee instead of destroying it. . .
. In this case it is manifest that the provision can be
determined by competent testimony outside of any legis-
lative enactment, and that all the language of the constitu-
tion indicating that the object is referred to the legislature

for action is with reference to fixing the salary, and the fact that this particular portion alone of the subject is especially referred to the legislature excludes the idea that the ascertainment of the population was also referred to the legislature." *Anderson v. Whatcom County,* 15 Wash. 47 (45 Pac. 665, 33 L. R. A. 137)'.

Apply the reasoning in the case just cited to § 5, art. 11, of the constitution, and to the act of 1895 fixing the compensation according to a defined population, and we must come to the conclusion that the legislature has fixed the salary, but has left it to the court to ascertain the class in which the officer falls to whom the particular salary so fixed is payable. The presumption is that the legislature intended to carry into effect the provision of the constitution determining the compensation of officers in proportion to their duties, those duties being greater or less according to the population served; and that it did not intend to destroy or limit the right which the constitution gave by the repeal of the law for a biennial census. To give this repeal the effect contended for by the appellants would be to destroy a right conferred by the constitution, viz: the right to receive pay in proportion to the duties performed. The salary to be paid has been clearly and definitely fixed according to population. There is nothing in the provisions of § 5, art. 11, of the constitution, from which it can be inferred that the *means* of ascertaining the population for the classification was also referred to the legislature. It is just as manifest in this case as in *Anderson v. Whatcom County, supra,* that the population of a county can be determined by the courts by competent testimony outside of any legislative enactment as that the population of a city could be so determined. The board of county commissioners is charged by law with the financial management of the county affairs. The county officers must be paid in proportion to their duties as based on pop-

ulation.  In the absence of any law pointing out how that population should be ascertained, the board of county commissioners can determine the fact by proof, just as it can determine any other fact necessary for the discharge of its duties.  By the act of March 18, 1901, § 1 of the act of March 26, 1890, was amended in several particulars, and all reference as to how and by what means the population should be ascertained was omitted.  This omission leaves this last act without force, unless the boards of county commissioners or the courts are authorized to ascertain the population.  The enactment of the law of March 18, 1901, without reference to the mode of ascertaining the population of classified counties, strengthens the view we have adopted in this case that it was the intention of the legislature to leave that matter, as incident to its duties, with the board of county commissioners, and the courts in case the action of the board of county commissioners was questioned.  We think that the court below was justified in receiving proof of the population of Skagit county in November, 1900, when the county clerk was elected, and that he was entitled to be paid by the board of county commissioners according to the population of Skagit county, and that the federal census for 1900 is competent evidence to prove this population; that, according to the evidence in this case, the population of Skagit county when the claim was presented, was above fourteen thousand and less than sixteen thousand; that under the act of March 26, 1890, Skagit county was at the time the claim was presented for allowance, in the thirteenth class, and the respondent is entitled to the salary for county clerk within that class.

The judgment of the court below is therefore affirmed.

REAVIS, C. J., and ANDERS, DUNBAR and HADLEY, JJ., concur.

FULLERTON, J., (dissenting).—I dissent from the opinion and judgment in this case. The power to regulate the compensation of county officers is vested in the legislature, subject only to the restriction the constitution imposes. These restrictions are that such compensation must be by salary, and must be in proportion to the duties imposed. When, therefore, the legislature, by the act of 1890, classified the counties by population, adopting the federal census of that year as a basis, and fixed the compensation of county officers in accordance therewith, it enacted a constitutional and valid law, binding alike upon the officers affected by it and the courts. Such law being valid then is valid now, unless it be shown that the salary as fixed by that law is not in proportion to the duties the office now imposes upon the officer holding it. Of this there is no pretence in the record before us. The relator rests his case on the naked allegation that the federal census of 1900 shows that the population of his county has outgrown the legislative classification. This, in my judgment, is no reason for increasing his salary beyond that which the legislature has provided.

MOUNT, J., concurs in dissenting opinion.