[No. 9466.   Department Two.   October 26, 1911.]

A. FAUCHER, *Respondent*, v. A. F. ROSENOFF, *Auditor of Adams County, Appellant*.[1]

COUNTIES—CLASSIFICATION— POPULATION — ASCERTAINMENT — SALARY OF OFFICERS.   Under Rem. & Bal. Code, § 4031, classifying counties by reference to their population for the purpose of fixing the salary of county officers, the Federal census automatically controls the classification of counties until such time as the population of the county shall be otherwise determined by competent authority; although prior to the census the county commissioners had entered an order declaring the county to be in another class having a greater population (CHADWICK, J., dissenting in part).

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered February 6, 1911, upon findings in favor of the plaintiff, after a trial on the agreed statement of facts, in an action for a writ of mandamus.   Reversed.

*The Attorney General*, and *George A. Lee, Assistant*, and *John Truax*, for appellant.

*Lovell & Davis*, for respondent.

CROW, J.—This action was commenced by A. Faucher against A. F. Rosenoff, auditor of Adams county, to obtain a writ of mandamus compelling the issuance of a salary warrant to plaintiff as county treasurer, on the basis of a salary of $1,800 per annum.   The writ was issued, and defendant has appealed.

On October 3, 1906, the board of commissioners made an order placing Adams county in the thirteenth class, which means that the population was then ascertained to be 14,000 and under 16,000.   Rem. & Bal. Code, § 4031.   Thereafter, from January, 1907, until January, 1911, salaries of officers of counties of the thirteenth class were paid in Adams county, the treasurer being allowed $1,800 per annum.   According

[1]Reported in 118 Pac. 315.

to the Federal census of 1910, it was ascertained that the population of Adams county was 10,920, which population would place it in the fifteenth class, and fix the treasurer's salary at $1,450 per annum. Respondent was elected on November 8, 1910, and qualified on January 9, 1911. On or about January 12, 1911, the appellant, as county auditor, received from the state bureau of inspection and supervision of public offices, the following letter:

"A. F. Rosenoff,            Olympia, January 11, 1911.
    "Auditor Adams County,
        "Ritzville, Wash.
    "Dear Sir: Under chapter 76, Laws of 1909, you are made *ex-officio* member of this bureau, and as such we would request that you submit the following resolutions at the next meeting of your present board of county commissioners:
    " 'Resolved, That on or before the 8th day of November, 1910, the population of Adams county was found by the Federal census taken April 1st, 1910, to be 10,920, and that by reason of said finding Adams county is a county of the fifteenth class, therefore all officers are ordered to so govern themselves.' You are hereby notified that in drawing warrants for salaries hereafter they should be as set forth for a county of the fifteenth class. Of course the passage of this resolution is not absolutely necessary, but it would relieve any doubt and all question over this matter. The law has been held by the attorney general as follows, that the taking of the census automatically operates to regulate the classification of the county as of the date on which the census was taken until such time thereafter as another census shall be taken."

Appellant immediately referred this letter and resolution to the county commissioners, who took no action. In pursuance of its instructions, appellant proceeded to draw all warrants for salaries pertaining to counties of the fifteenth class, and tendered respondent a warrant for $89.70, due him on February 1, 1911, for twenty-three days' services at $1,450 per annum. The warrant was refused by respondent, who thereupon commenced this action. He insists the controlling question on this appeal is whether the county commissioners,

the superior court, the supreme court, or the state bureau of inspection and supervision of public offices, is authorized to determine the classification of counties. He argues that exclusive original jurisdiction for the purpose is vested in the county commissioners; that when a given classification has been determined, it will continue until changed by them, and that the Federal census cannot *ipso facto* change it. Section 5, art. 11, of the state constitution provides that the legislature shall regulate the compensation of county officers in proportion to their duties, and for that purpose may classify counties by population. Classification has been made by the legislature. Section 4031, Rem. & Bal. Code, provides:

"For the purpose of regulating the compensation of county officers and for all other purposes herein provided for, the several counties of this state are hereby classified according to their population: . . .

"Counties containing a population of fourteen thousand and under sixteen thousand shall belong to and be known as counties of the thirteenth class; . . .

"Counties containing a population of ten thousand and under twelve thousand shall belong to and be known as counties of the fifteenth class; . . ."

The words *"shall belong to and be known as"* are mandatory. When it was definitely ascertained by a legal and proper enumeration that Adams county had a population of 10,000 and under 12,000, the law at once assigned it to the fifteenth class. At the trial the parties stipulated:

"That the population of Adams county, Washington, as determined by the Federal census taken on or about April 1, 1910, then was 10,920 persons, and said fact shall be accepted and taken as evidence, and it shall be unnecessary to introduce any other evidence or proof as to the population of said county on said first day of April, 1910, or at any time thereafter."

No additional evidence was offered, and we must accept as an established fact that, on November 8, 1910, Adams county had a population of 10,000 and under 12,000. It was, there-

fore, a county of the fifteenth class, so fixed by statute, when respondent was elected. It could not belong to a higher class, without a population in excess of 12,000. Respondent's theory seems to be that the commissioners, in October, 1906, determined Adams county had a population of 14,000 and under 16,000, and was then a county of the thirteenth class; that such classification was not questioned at that time by legal procedure or otherwise; that it has since remained, and must remain, in that class until the commissioners as the only body of original jurisdiction order a reclassification; and that, in the absence of further action by them, the courts have no jurisdiction to fix, determine, or adjudge any other classification. We find no statute conferring original or exclusive authority upon county commissioners to determine the classification of their counties, nor has respondent cited any such act. This court, in *State ex rel. Smith v. Neal*, 25 Wash. 264, 65 Pac. 188, 68 Pac. 1135, recognized the authority of county commissioners or the superior court to ascertain the actual population of a county, so that the law which determines the classification might be applied to the facts thus found. In that case we said:

"The salary to be paid has been clearly and definitely fixed according to population. There is nothing in the provisions of § 5, art. 11, of the constitution, from which it can be inferred that the *means* of ascertaining the population for the classification was also referred to the legislature. It is just as manifest in this case as in *Anderson v. Whatcom County*, *supra*, that the population of a county can be determined by the courts by competent testimony outside of any legislative enactment as that the population of a city could be so determined. The board of county commissioners is charged by law with the financial management of the county affairs. The county officers must be paid in proportion to their duties as based on population. In the absence of any law pointing out how that population should be ascertained, the board of county commissioners can determine the fact by proof, just as it can determine any other fact necessary for the discharge of its duties. By the act of March 18, 1901, § 1 of the act

of March 20, 1890, was amended in several particulars, and all reference as to how and by what means the population should be ascertained was omitted. This omission leaves this last act without force, unless the boards of county commissioners or the courts are authorized to ascertain the population. The enactment of the law of March 18, 1901, without reference to the mode of ascertaining the population of classified counties, strengthens the view we have adopted in this case that it was the intention of the legislature to leave that matter, as incident to its duties, with the board of county commissioners, and the courts in case the action of the board of county commissioners was questioned. We think that the court below was justified in receiving proof of the population of Skagit county in November, 1900, when the county clerk was elected, and that he was entitled to be paid by the board of county commissioners according to the population of Skagit county, and that the Federal census for 1900 is competent evidence to prove this population; that, according to the evidence in this case, the population of Skagit county when the claim was presented, was above fourteen thousand and less than sixteen thousand; that under the act of March 26, 1890, Skagit county was at the time the claim was presented for allowance, in the thirteenth class, and the respondent is entitled to the salary for county clerk within that class."

By this announcement it was not intended to hold that exclusive jurisdiction had been conferred upon county commissioners to fix the classification of a county so that it could not be thereafter raised or lowered until they see fit to take further action. In 1906 the commissioners determined Adams county had a population of 14,000 and under 16,000. Their finding does not seem to have been questioned at that time. The Federal census shows that nearly four years later Adams county had a population of only 10,920. There is no suggestion that the determination made by the commissioners, whether by enumeration or otherwise, was more accurate than the later enumeration of the Federal census in 1910, or that the Federal census was deficient in any respect. It is evident that Adams county has lost a large percentage of its popula-

tion since 1906, or that the commissioners blundered most egregiously in their enumeration or estimate which they caused to be made at that time. In any event, if Adams county in 1910 had a population of only 10,920, it then, by statute, automatically fell into the fifteenth class, as soon as that fact was properly ascertained, irrespective of what its population may have been in 1906 or at any other time. It would be absurd to hold the commissioners, by their inactivity and failure to note or act upon the Federal census, could assume to continue their county in the thirteenth class, even though it be conceded it had at any time been rightfully assigned to that class.

The cases of *State ex rel. Smith v. Neal, supra,* and *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479, 104 Pac. 797, necessarily recognize the doctrine that, when by competent evidence, the fact is established that the population of a county has so increased as to assign it into a higher class, the county officers elected after such increase will be entitled to the advanced salaries pertaining to counties of the higher class, and may compel payment by writ of mandamus. The theory of those cases is that the actual population determines the classification. While we have held an increase in population may be ascertained by county commissioners, we have not held they may arbitrarily fix a certain classification or, when a later census shows too high a grade has been fixed, or shows that the county has decreased in population, the courts will be without jurisdiction to act because the commissioners remain inactive. If by mandamus the courts are entitled to direct the payment of higher salaries when the population of a county warrants such an order, and may do so irrespective of action by the county commissioners, they certainly have jurisdiction to make such orders as may be necessary to enforce the payment of decreased salaries should a loss of population reduce the rank of the county. The principle is the same in each case. If Adams county had a population of 14,000 and under 16,000 on November 8, 1910,

when respondent was elected, he is entitled to the salary he claims. The only competent evidence before us—the Federal census of 1910—shows it then had a much smaller population. This being true, respondent cannot without further proof, maintain this action. The policy of the constitution and statutes is that salaries of county officers are to be determined by the legal classification of their counties at the time of their election. Such classification is controlled, not by an order of the county commissioners, but by actual population, which is to be ascertained by competent evidence.

The judgment is reversed, and the cause remanded with instructions to deny the writ.

DUNBAR, C. J., ELLIS, and MORRIS, JJ., concur.

CHADWICK, J. (dissenting in part)—The present population of Adams county being stipulated by the parties, I concur in the result, but not in the reasoning of the majority. The opinion goes further than is necessary to decide the case before us, and in so doing, although it may seem paradoxical, the court has not gone far enough. The law has been settled in this state that, inasmuch as the constitution failed to provide any method for the classification of counties, the power lies in the county commissioners and also in the courts. The suggestions in the opinion to the effect that the Federal census would automatically work a change in such classifications and, when it is definitely ascertained, etc., *the law* at once assigns the county to its proper class, are wrong when considered in the light of our own decisions and the fundamental principles of the law. In this state, where the population is rapidly growing and where it has in fact increased three-fold within ten years, we may well take judicial notice of the fact that counties should be re-classified between the census periods. Now, the commissioners of Adams county fixed the population and classification of the county in 1906, and their act having passed unchallenged, we are bound to presume that they acted upon sufficient evidence, and their order is binding

until another order is made by them or by a court of competent jurisdiction. That the Federal census may be taken as presumptive evidence, I have no doubt; and if, upon its promulgation, the commissioners of a county should refuse to act thereon, together with such other evidence as might be available at the time, it would be the duty of a court to compel such action by mandamus. But it does not *ipso facto* work any change. It may be presumed that we are holding that a classification once fixed by competent authority is undone by a subsequent census taken under Federal authority, and that salaries drawn thereunder have been improperly drawn. I do not understand that it is the intention of the majority to hold at the present time that the salaries paid under former classifications have not been rightfully paid, but the language employed might so imply. For that reason I do not sign the majority opinion, but concur in the result.