[No. 16259. *En Banc.* January 5, 1921.]

A. J. JAMES *et al., Appellants,* v. J. B. McMILLAN *et al., Respondents.*[1]

COUNTIES (4)—CLASSIFICATION—DETERMINATION—POWERS OF COM-
MISSIONERS—STATUTES—CONSTRUCTION. Const., art. 11, § 5, empow-
ers the legislature to classify counties by population for the pur-
pose of regulating the compensation of officers, and the legislature
having provided by Laws of 1905, p. 42, that counties of the first
class, as determined by the "last preceding Federal census," shall
receive certain salaries, the county commissioners have no power
to determine the population and fix the status of a county as one of
the first class.

SAME. Laws of 1919, p. 490, providing that the classification of
all counties for the purpose of fixing the salaries of county officers,
shall be according to the last preceding Federal census, cannot af-
fect county officers prior to the general election of 1920.

SAME. County commissioners having determined, without power
to do so, that a county has sufficient population to raise it to a
county of the first class, the finding will be sustained as fixing its
status as a county of the second class, that being the highest class
within the authority of the commissioners to fix.

Appeal from a judgment of the superior court for
Whatcom county, Allen, J., entered November 12, 1920,
dismissing an action to recover excessive salaries paid
to county officers, and for injunctive relief, upon sus-
taining a demurrer to the complaint. Reversed.

*Bixby & Nightingale,* for appellants.

*Loomis Baldrey* and *C. E. Abrams,* for respondents
County Commissioners *et al.*

*Hadley & Abbott,* for respondents Henry Slater
*et al.*

MACKINTOSH, J.—This action in equity is waged by
taxpayers of Whatcom county with the object of en-
joining the payment of what they claim to be illegal

[1]Reported in 194 Pac. 823.

and excessive salaries to the respondents, as officers of said county, and to recover from respondents portions of salaries which have already been paid them.

When the respondents were elected to their respective offices, Whatcom county was a fifth-class county. Before taking their offices in January, 1919, a petition was filed with the board of county commissioners, asking the board to determine the population of the county with a view to re-classifying it, and raising it to a county of the first class, which raise would result in an increase of officers' salaries. The board took cognizance of the petition, held a hearing, made a finding, and entered a final order determining that the county had sufficient population to classify it as a county of the first class.

It is the position of the appellants that the board, in making its finding, acted without jurisdiction or authority, for the reason that the classification of the county was to be determined by, and in accordance with, the last preceding Federal census, and that, according to such census, Whatcom county is a county of the fifth class, and that the board of county commissioners had no discretion in the matter, but must be guided by § 403 *et seq.*, Rem. Code. Demurrers were sustained to the complaint, upon which the appellants elected to stand, and a judgment dismissing the action being made, notice of appeal was given, and the case is now before us.

In its determination, we will consider but the one question whether the board had jurisdiction to make an order which resulted in classifying Whatcom county as a county of the first class.

Article 11, § 5, state constitution, relating to the election and compensation of county officers, is in the following language:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. . . ."

The first session of the legislature of the state, for the purpose of giving effect to this constitutional provision, passed the act which appears as Laws of 1889-90, p. 302, ch. 10, which, in so far as it is material for our consideration at present, provides, in § 1, that:

"For the purpose of regulating the compensation of county officers herein provided for, the several counties of this state are hereby classified according to their population as will be ascertained by the Federal census of 1890, and thereafter every two years by the county or precinct assessors' enumeration of the census of the different counties of this state as follows, to-wit (then follows the classification) . . ."

This remained the statute law of the state in regard to the classification of counties and the compensation of their officers until the session of 1893, which affected the question by passing Laws of 1893, p. 76, ch. 47, which abolished the taking of the census biennially by the county assessor. The law then remained that the several counties of the state were classified according to the Federal census of 1890, until the legislature, in 1895, Laws of 1895, p. 409, ch. 161, changed the salaries of the officers of the counties of the different classes, but did not deal with the classification of counties in any manner.

This continued to be the statute law until Laws of 1901, p. 289, ch. 136, was enacted, this section being the

same as the original § 1 of ch. 10, Laws of 1889-90, except that it omitted the words, "As will be ascertained by the Federal census of 1890, and thereafter every two years by the county or precinct assessors' enumeration of the census of the different counties of this state."

In 1905 (Laws of 1905, p. 42, ch. 21) was enacted as an amendment to the preceding laws upon the same subject, and that act read, in part, as follows:

"    .  .  .   on and after the passage of this act salaries of county officers of counties of the *first class,* as determined by the *last preceding Federal census* shall be as follows  .  .  ."

The legislature has not further modified the law upon this subject, except to pass the act of 1919, to which we will later refer, but which does not affect the question before us.

To summarize the statute law, then, we find this condition of the constitutional and statutory law up to the present time: The constitution provides that the legislature shall regulate the compensation of county officers in proportion to their duties and for that purpose may classify the counties. No mention is made of a standard by which the classification shall be made or the body which shall determine the population of the several counties so as to ascertain the class to which any particular county belongs. The legislature, in 1889, made the classification of counties and provided that the population as shown by the census of 1890 should determine the status of each individual county, and that thereafter that status should be determined by recourse to the biennial county assessors' census. In 1893, these biennial county censuses being abolished, we find the law from 1893 to 1901 to provide that the status of the several counties was to be

arrived at according to the figures of the census of 1890. From 1901 to 1905, by virtue of the act of 1901 above referred to, there was no provision in the law as to the standard of determining the population of the various counties, nor was there any provision as to the board or tribunal that might determine such population. In 1905 the standard as to counties of the first class was established.

With this situation of the constitution and statutes in mind, let us turn to the decisions bearing upon it.

*Anderson v. Whatcom County,* 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137, decided in 1896, was a case arising in regard to the salaries of justices of the peace in New Whatcom precinct, Whatcom county. Article 4, § 10, of the constitution reads, in part:

" . . . in incorporated cities, or towns, having more than five thousand inhabitants, the justices of the peace may receive such salary as may be provided by law."

At the time of taking the census in 1890, the city of New Whatcom had not been organized and no assessor's census had been taken prior to 1893, when the provision for such census was repealed. The question arose as to how the population of New Whatcom precinct should be determined in order to fix the salary of its justice of the peace. It was the claim of the county officers that the assessor's or Federal census was the only criterion for the determination of the population, while the justice of the peace claimed that the question of population was a question of fact to be ascertained as any other fact. The court stated the question as being, "whether the constitutional provision in relation to salaries of justices of the peace in cities containing a population of five thousand inhabitants or more is self-executing, or whether it requires

legislation to give effect to the constitutional provision." In answering this question, the court said:

"It seems to us that under this constitutional provision it becomes a fixed fact that cities or towns having more than five thousand inhabitants are entitled to salaried justices of the peace; that that fact, and the ascertainment of it is directed to the court and not to the legislature; that to the legislature was directed the fixing of the salary, and the legislature in this instance has fixed the salary under the power given to it by the constitution. . . .

"In this instance the enactment of the legislature might absolutely destroy the right conferred by the constitution. The legislature has not seen fit to provide for the state census, so that under the statute law as it exists the only means of ascertainment of the population of the city is the Federal census, which is taken only every ten years. It might very reasonably occur that a city which did not have quite the requisite five thousand population at the time of the taking of the federal census in 1890 might within six months or a year have the requisite population, and yet this fact could not receive a judicial determination or announcement for the period of nine or ten years, so that, if the law should receive this construction, its effect would be to destroy or limit the right which the constitution gave. The test provided for by the legislature must be a reasonable one—one which would carry into effect the constitutional guarantee instead of destroying it."

The court then proceeded to decide that the court was justified in determining the population. It will be seen by referring to the constitutional provision in regard to justices of the peace and the constitutional provision relating to the election and compensation of county officers that the former is entirely silent as to any power given the legislature to classify the cities or towns, while the latter expressly provides that the legislature "may classify the counties by population."

The *Anderson* case, *supra,* then, is authority for the position that where neither the constitution nor the statutes provide the method by which the classification shall be made, that the provision for the creation of public offices and the salaries of the incumbents would not be nullified by such absence, but that the court might determine the population in order to fix the salaries or determine the class to which the municipality properly belongs.

In *State ex rel. Smith v. Neal,* 25 Wash. 264, 65 Pac. 188, 68 Pac. 1135, decided in 1901, the question which arose was more nearly parallel to the one now before us. In that case the county clerk of Skagit county claimed that his county should be classified as a county of a higher class, for the reason that the Federal census showed the county to have a population entitling it to to be classified in the thirteenth class, and he claimed salary according to the schedule of a thirteenth class county. The court had to determine how such reclassification should be made, the law being silent in that regard. It was held:

"The mere fact that the legislature has failed to point out the means of ascertaining the population should not defeat the plain provisions of the law and the mandates of the constitution. . . . There is nothing in the provisions of sec. 5, art. 11, of the constitution, from which it can be inferred that the means of ascertaining the population for the classification was also referred to the legislature. . . . By the act of March 18, 1901, § 1 of the act of March 26, 1890, was amended in several particulars, and all references as to how and by what means the population should be ascertained was omitted. This omission leaves this last act without force, unless the boards of county commissioners or the courts are authorized to ascertain the population. The enactment of the law of March 18, 1901, without reference to the mode of ascertaining the population of classified counties,

strengthens the view we have adopted in this case that it was the intention of the legislature to leave that matter, as incident to its duties, with the board of county commissioners, and the courts in case the action of the board of county commissioners was questioned. We think that the court below was justified in receiving proof of the population of Skagit county in November, 1900, when the county clerk was elected, and that he was entitled to be paid by the board of county commissioners according to the population of Skagit county, and that the Federal census for 1900 is competent evidence to prove this population."

Justices Fullerton and Mount dissented from this view of the court, stating that, in their opinion:

"When, therefore, the legislature, by the act of 1890, classified the counties by population, adopting the Federal census of that year as a basis, and fixed the compensation of county officers in accordance therewith, it enacted a constitutional and valid law, binding alike upon the officers affected by it and the courts. Such law being valid then is valid now, unless it be shown that the salary as fixed by that law is not in proportion to the duties the office now imposes upon the officer holding it."

This case, then, is authority for the rule that during the time the legislature was silent as to how or by what means the population of the various counties was to be determined, either the county commissioners or the courts could ascertain the population, and that the population, as it appears by the Federal census, was proper evidence to be considered in determining the fact of population.

The respondents place considerable emphasis on the reference by the court in the *Smith* case, *supra*, to the fact that, because the constitution is silent upon the question, that the means "of ascertaining the population for the classification" was not referred to the legislature. As we read it, this language is not sub-

ject to the meaning that respondents impute to it. The
true interpretation of the language is that the consti-
tution, when it provided that the legislature may clas-
sify the counties and has not indicated by what meth-
ods or by whom the quantum of population of each
individual county was to be ascertained, cannot be
construed to indicate that it was not within the power
of the legislature to establish a standard by which the
population was to be measured or the tribunal which
was to do the measuring. For it must be remembered
that the constitution of the state is not a grant of
power but a limitation of power, and when the legis-
lature may have established the standard by which
population is to be ascertained or the body by whom it
is to be ascertained, such act will be in entire accord
with, and justified by, the constitution, unless the people
of the state, by that constitution, have limited them-
selves through their legislature from the right to pass
such an act. An examination of the constitution will
show that, while it is silent as to any authority given to
the legislature to pass acts determining how or by
whom population was to be ascertained, there is also no
expression or implication contained in it that the legis-
lature has not such power.

With the constitution in that condition, the legisla-
ture possesses the power, independent of any grant by
the constitution, and may pass such acts and that
power would not have been increased had the consti-
tution expressly granted it. When the constitution
expressly granted the power to regulate the salaries
of the county officers, the only limits it placed upon
that power was that the compensation should be in pro-
portion to the duties of the different officers, and also
granted the power to classify the counties by popula-
tion. By making these two grants, the constitution im-

pliedly granted (and we have seen no such grant is necessary) all the power necessary or incidental to the exercise of the general power.

*State ex rel. Maltbie v. Will*, 54 Wash. 453, 103 Pac. 479, 104 Pac. 797, decided in 1909, merely passed upon the constitutional provision, § 8, art. 11, which provides that compensation of officers shall not be increased after their election and during their term of office, and held:

"It was thus determined that, for the purpose of ascertaining the class to which a county properly belonged and fixing salaries, the county commissioners and superior court were authorized to determine the population as it existed when the county officers were elected, and that they should be compensated accordingly. This court did not decide that population might be ascertained as it existed at any other time during a term, for the purpose of advancing a county to a higher class and increasing the compensation of incumbent county officers after their election and during their existing terms. Such a holding would have required a ruling in violation of the inhibition contained in § 8, of art. 11, *supra*."

In *Faucher v. Rosenoff*, 65 Wash. 416, 118 Pac. 315, decided in 1911, the court had under consideration the classification of Adams county, and held that, under the provisions of the law classifying the counties with reference to their population, the Federal census, in the absence of other evidence, controls such classifications. This case is authority for the proposition that section 4031, *et seq.*, Rem. Code, which provides that counties having a certain population "shall belong to and be known as" members of certain classes, is mandatory; and that, when it has been ascertained by the proper enumeration that a county has a certain population, the law at once assigns it to the class to which it properly belongs. The reference to the Federal census of

1910 is possibly misleading, as the law at the time of the writing of the opinion did not fix the Federal census as the basis for classification. The court was dealing with a question where it had been stipulated between the parties that the Federal census of 1910 should be the only evidence as to the actual population. The court further held that the county commissioners were not given exclusive authority to determine the classification. This case cannot be authority for the general proposition that, under the condition of the law at that time, the Federal census was the only basis for determining the population. The decision goes no further than to establish the rule announced in the *Smith* case that the Federal census was competent evidence to prove population. That being the only evidence in the *Faucher* case, of course, it became the basis upon which the body determining the population was bound to rest its finding of population.

In *Lewis County v. Montfort*, 72 Wash. 248, 130 Pac. 115, decided in 1913, the plaintiff, Lewis county, was attempting to recover a portion of the salary paid to the county clerk for the reason that the county had been ascertained to be a county of the thirteenth class, and therefore, it was alleged, the county commissioners had acted illegally when they found the population to be of another extent and had reclassified the county as a member of the seventh class. It was there held that the board of county commissioners, having authority, in the absence of any provision of the legislature to the contrary, to determine the population of the county, in such determination it was acting as a quasi-judicial body, and that its action, in the absence of appeal or writ of certiorari would be held to be conclusive of the fact of the proper classification of the county, and that an officer receiving a salary allowed under such classification, would be completely pro-

tected and could not be compelled to refund. It will be noted that the decisions in the *Faucher* and *Lewis County* cases, *supra*, were made subsequent to the act of 1905, and that no reference is made in either opinion to that act, and this for the reason, of course, that the act of 1905 only related to the means of ascertaining population in counties of the first class.

The law, then, was between 1901 and 1905 that, as to all counties, no standard had been established or means provided for the determination of the population of the counties as a basis for their classification, but that, from 1905 until the time involved in the present suit, a basis had been established as to counties of the first class; and that, during all the time from 1901 until the present, either courts or county commissioners could determine the population of their counties, and that proof of the Federal census was proper evidence of the fact, but that the population could be determined by other proof. The act of 1905 provides that, automatically, counties having a population in excess of 80,000, "as determined by the last preceding Federal census shall be counties of the first class." "As determined by the last preceding Federal census," means the same as the provision "ascertained by the Federal census" which was contained in the original act of 1889-90. "Determined" is defined in 14 Cyc. 236:

"To decide; to settle; to end; to bring to an end; resolve to come to a decision; to ascertain or state definitely; to decide upon, as after consideration or investigation; to bring to a conclusion; to put an end to; . . ."

The act of ascertaining is defined in 3 Cyc. 1013:

"To make sure or certain; to fix; to establish; to determine; to settle; to find out; to find out or learn for a certainty, by trial, examination or experiment."

The act of 1905, following the reasoning of the *Faucher* case, *supra,* means that any county which, by the Federal census, has a population in excess of 80,000, falls automatically into the classification of a first class county, and that no act of the county commissioners, court, tribunal or other body is necessary in order to determine that status; and the legislature having the power, as we have seen, to provide the method and means by which the population is to be determined, has exercised that power, in so far as it relates to counties of the first class, by establishing the last preceding Federal census as the standard, and that counties of a lower class cannot be raised into the classification of first class counties unless and until the Federal census shows that they have a minimum population required to constitute them counties of the first class.

The complicated situation of the law has been clarified by the act of the legislature of 1919, Laws of 1919, p. 490, ch. 168, which provides that hereafter all counties shall be classified "according to their population . . . as determined by the last preceding Federal census." This act, of course, as it relates to county officers, cannot affect any officers elected prior to the general election of 1920; but when the act of 1919 is in effect, the question before us cannot arise, for under the act of 1919, all counties automatically fall into their proper classification by reference to the last preceding Federal census.

It follows, therefore, that when the board of county commissioners of Whatcom county attempted by their investigation to determine that Whatcom county had more than 80,000 people and attempted to classify it as a county of the first class, the board was acting in excess of and without jurisdiction.

Under the rather anomalous situation of the law, as we have disclosed it to exist by reason of the statutes, the highest classification that it was possible for the county commissioners of Whatcom county to assign their county was that of the second class. They having found that the county had a population sufficient to make it one of the second class, and their finding not having been appealed from or reviewed, such finding must be taken as conclusive, and their action, although it was void as to the determination that Whatcom county was one of the first class, was valid in so far as they had the power to exercise jurisdiction, *i. e.,* to raise the county to one of the second class. The appellants' complaint, therefore, stated a cause of action in so far as it sought to restrain the payment of salaries to county officers of Whatcom county in excess of salaries provided for county officers of the second class, and the judgment of the court will therefore be reversed and remanded with instructions to overrule the demurrer. It is so ordered.

HOLCOMB, C. J., BRIDGES, MAIN, MOUNT, PARKER, and TOLMAN, JJ., concur.