[No. 28575. Department Two. November 25, 1942.]

THE STATE OF WASHINGTON *on the Relation of Thomas G. Jordan et al., Appellants,* v. HERMAN DEHART, *as Auditor of Cowlitz County, Respondent and Cross-appellant.*[1]

*Lester Huntington,* for appellants.

*Joe L. Johnson,* for respondent and cross-appellant.

[1]Reported in 131 P. (2d) 156.

SIMPSON, J.—This action was brought by Thomas G. Jordan and E. F. Millard, county commissioners of Cowlitz county, against Herman Dehart, auditor of that county. The object of the action was to force the auditor by mandamus to issue salary warrants at two hundred dollars per month each, as prescribed by state law for commissioners holding office in counties of the third class. The suit was provoked by the refusal of the auditor to issue warrants in excess of one hundred fifty dollars per month, the amount allowed by law for commissioners in fourth-class counties.

After a trial on the merits, the trial court granted the writ in favor of E. F. Millard, but denied it as to Thomas G. Jordan. The relator Thomas G. Jordan has appealed from that portion of the order denying his petition for a writ of mandate, and the respondent auditor has cross-appealed from that portion of the order granting the petition of E. F. Millard.

The case comes to us upon an agreed statement of facts which are summarized as follows: Thomas G. Jordan was elected county commissioner of Cowlitz county November 8, 1938, and E. F. Millard was elected to the same office November 5, 1940. The board of county commissioners of Cowlitz county in their budget for 1941 allowed Jordan and Millard monthly salaries of two hundred dollars each.

The population of Cowlitz county as determined by the Federal census was 31,808 in 1930 and 40,155 in 1940, making it a county of the fourth class until 1940 and a third-class county since the later date. Respondent, as auditor of Cowlitz county, refused to issue the salary warrants in the amount provided for commissioners serving in third-class counties for the reason that the county was of the fourth class.

The question presented by appellant's appeal is whether Art. XI, § 8, of the Washington state consti-

tution prohibits the raise in salary. He contends that it does not for the reason that the salaries of the county commissioners were fixed by the legislature at the time it classified the counties of the state and fixed the salaries of county officers in accordance with the classification.

Rem. Rev. Stat. (Sup.), § 4200-1a [P. C. § 1567-11], Laws of 1933, chapter 136, § 1, p. 475, provides that counties containing a population of forty thousand and less than seventy thousand shall be known as counties of the third class. Rem. Rev. Stat. (Sup.), § 4200-5a [P. C. 1567-16], Laws of 1937, chapter 197, § 3, p. 973, provides that county commissioners in counties of the third class shall receive a salary of two thousand four hundred dollars per year and county commissioners in counties of the fourth class shall receive one thousand eight hundred dollars per year.

Mr. Jordan's appeal is controlled by *State ex rel. Maltbie v. Will*, 54 Wash. 453, 103 Pac. 479, 104 Pac. 797. In that case, the county clerk sought a writ of mandamus because of the increase in population. This court said:

"The constitution, art. 11, § 8, requires that the compensation of a county officer, authorized and fixed at the date of his election, must continue without change during the entire term for which he is elected. If, during such term, the county, by reason of an increase in population, is advanced to a higher class, the increased salary resulting therefrom cannot benefit the incumbent, but will be paid to his successor. This construction harmonizes the various sections of our constitution relating to the matter of an increase or decrease of salaries of public officers. Section 25 of art. 2 provides that the compensation of any public officer shall not be increased or diminished during his term of office. Section 25 of art. 3 provides that the compensation of state officers shall not be increased or diminished during the term for which they shall have been elected. Section 13 of art. 4 provides that the salaries of supreme and

superior court judges shall not be increased *after their election,* nor during the term for which they have been elected, and § 8 of art. 11 provides that the salary of any county, city, town or municipal officer shall not be increased or diminished *after his election* or during his term of office. These sections disclose a consistent and uniform intention to prevent any increase or decrease in the compensation of public officers during their respective terms of office, and in the cases of judges and county officers not only during their terms but also at any time *after their election."*

Appellant argues that the case just cited is distinguishable from the one at bar, because in that case the county commissioners took the census which raised the classification of the county. As we view it, this contention is without merit.

At the time the census was taken in Douglas county, the law provided that county commissioners could take the census and that county classification should be based upon that census. At the present time, our law, Rem. Rev. Stat. (Sup.), § 4200-5a, provides that classification of counties shall be determined by the last preceding Federal census, or under the provisions of Rem. Rev. Stat., §§ 4200-6 to 4200-11 [P. C. §§ 1565-1 to 1565-6]. It is immaterial which governmental agency took the census. The fact that the census was taken by the county commissioners in the *Maltbie* case and by the Federal government in the present case is immaterial. The questions presented in this and the cited case do not concern the agency which takes the census, but rather the effect the facts, as determined by the census, have upon the salaries of the county officers.

Cross-appellant argues that the constitution prohibits commissioner E. F. Millard from receiving a salary as provided for counties of the third class. Mr. Millard was elected November 5, 1940, subsequent to the taking of the census in 1940. The Federal census was taken pursuant to 13 U. S. C. A. (Sup.) §§ 201-219.

By § 201 it is provided that a census population shall be taken by the director of census in the year 1930 and every ten years thereafter. Section 202 provides:

"The period of three years beginning the 1st day of January in the year 1930 and every tenth year thereafter shall be known as the decennial census period, and the reports upon the inquiries provided for in said section shall be completed within such period."

Section 206 states:

"The census of the population . . . shall be taken as of the 1st day of April, and it shall be the duty of each enumerator to commence the enumeration of his district on the day following. . . ."

By § 213 the director of a census is authorized to have printed in such editions as he may deem necessary, preliminary and other census bulletins, and final reports of the results of the several investigations authorized by the statute and to publish and distribute the bulletins and reports. By § 218 the director is given authority at his discretion, upon the written request of the governor of any state or territory or of a court of record to furnish certified copies of so much of the population as may be requested. It will be noted that the statutes providing for the taking of the census do not provide for publishing, or rather do not point out the manner of publishing, the census or giving it to the public.

The information relative to the census of Cowlitz county was given to the court by an authenticated certificate issued by Vergil D. Reed, acting director of the census, dated April 23, 1941, containing the following information:

"DEPARTMENT OF COMMERCE
Bureau of the Census
Washington
April 23, 1941

"I HEREBY CERTIFY, That according to the official count of the returns of the SIXTEENTH CENSUS OF THE

UNITED STATES, on file in the Bureau of the Census, the population of the County of Cowlitz, State of Washington, as of April 1, 1940, is forty thousand one hundred fifty-five (40,155).

"Vergil D. Reed
"Acting Director of the Census."

The issuance of the certificate was authorized by the Federal law and gave definite information concerning the population of Cowlitz county as of April 1, 1940.

 The question then is whether the population as ascertained in the certificate was actually made and determined as of April 1, 1940. In other words, did Cowlitz county change from a fourth- to a third-class county April 1, 1940, or upon the date when the certificate was issued officially?

It is obvious that commissioner Millard cannot draw a salary of two hundred dollars per month unless Cowlitz county was of the third class at the time he was elected.

Cross-appellant contends that the determination of the census does not relate back to the date of which it was taken and cites in support thereof the following quotation from 14 C. J. S. 103, Census, § 6:

"It is generally held that a census, after it has been officially determined or ascertained and published, does not relate back and give the fact force as of the date of which the census was to be taken."

In *State ex rel. Smith v. Neal,* 25 Wash. 264, 65 Pac. 188, this court held that a county clerk, elected in November, 1900, was entitled to receive salary based upon the classification of his county at the time of his election. In passing upon the question involved, the court said:

"In the absence of any law pointing out how that population should be ascertained, the board of county commissioners can determine the fact by proof, just as it can determine any other fact necessary for the dis-

charge of its duties. We think that the court below was justified in receiving proof of the population of Skagit county in November, 1900, when the county clerk was elected."

In this case, the office holder was allowed to prove after his election and the time he took office that the county was entitled to a classification higher than it had at the time he was elected.

In the *Maltbie* case, *supra,* it appears that March 1, 1903, prior to the time the county clerk was elected the second time, that Douglas county had increased its population from 9,183 in 1902 to 10,168 in 1903, thereby raising its classification from the sixteenth to the fifteenth class. This court held that the clerk was entitled to a salary payable to clerks of counties of the fifteenth class during the second term of office. In that case the proof of the increased population was evidently determined by the trial court from oral evidence rather than from the record of those empowered to take the census. It is clearly apparent that the ascertainment of the increased population related back to the date the census was taken.

In *Faucher v. Rosenoff,* 65 Wash. 416, 118 Pac. 315, we announced the rule relative to salaries in certain classified counties as follows:

"The policy of the constitution and statutes is that salaries of county officers are to be determined by the legal classification of their counties at the time of their election. Such classification is controlled, not by an order of the county commissioners, but by actual population, which is to be ascertained by competent evidence."

Accord: *James v. McMillan,* 113 Wash. 644, 194 Pac. 823; *Excise Board, Washita County v. Lowden,* 189 Okla. 286, 116 P. (2d) 700; *Twin Falls ex rel. Cannon v. Koehler,* 123 P. (2d) (Idaho) 715; and *Underwood v. Hickman,* 162 Tenn. 689, 39 S. W. (2d) 1034.

558

We conclude that the question of population is a factual one to be determined by the Federal census as of April 1, 1940, the date mentioned in the Federal act.

Based upon the record before us and in accordance with the cited cases, we hold that Cowlitz county was of the third class at the time Mr. Millard was elected in 1940 and that he was entitled to receive the salary provided by law for county commissioners of the third class.

The judgment of the trial court is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and DRIVER, JJ., concur.