[No. 408.  Decided March 23, 1892.]

WILLIAM J. ROHDE, *Appellant*, v. JAMES SEAVEY, *Auditor of Jefferson County, Respondent.*

MUNICIPAL CORPORATIONS—CLASSIFICATION—STATE CENSUS—SALARY OF JUSTICES OF THE PEACE.

A municipal corporation organized by special charter and containing more than 1,500 inhabitants by the last federal census, is not a city of the "third class" according to the act of March 27, 1890, providing for the organization, classification and incorporation of municipal corporations, unless such city has re-organized under the provisions of said act.

A census taken pursuant to the provisions of Code 1881, § 2754, is not a state census within the meaning of art. 4, § 10 of the constitution, and of § 1 of the act of February 7, 1891, providing for salaries of justices of the peace in cities of 5,000 inhabitants or more.

Const., art. 4, § 10, providing that "in incorporated cities or towns having more than 5,000 inhabitants justices of the peace shall receive such salary as may be provided by law," does not apply to justices of the peace in incorporated cities which contained less than 5,000 inhabitants by the last federal census, but which contained more than 5,000 inhabitants by a census taken pursuant to § 2754, Code 1881.

*Certified from Superior Court, Jefferson County.*

Action by William J. Rohde against James Seavey to compel him as auditor of Jefferson county to draw a warrant in favor of plaintiff for salary as justice of the peace in and for Port Townsend. Judgment for defendant. The cause is certified to the supreme court by the judge of the superior court of Jefferson county for its decision of certain questions of law.

*Warren Carroll* and *Robertson & Jennings*, for appellant.
*R. E. Moody*, for respondent.

The opinion of the court was delivered by

HOYT, J.—This cause comes here on appeal from a *pro forma* judgment rendered in the court below, and a certifi-

cate of the judge thereof that the decision of certain questions of law is material and necessary to a proper disposition of the case. The questions thus deemed necessary to be decided, and which are certified to us for that purpose, are as follows:

*First:* Is a municipal corporation, organized by special charter, and containing more than fifteen hundred inhabitants by the last federal census, a city of the "third class," notwithstanding the fact that it has not re-organized under the act approved March 27, 1890, entitled "An act providing for the organization, classification, incorporation and government of municipal corporations," etc.

*Second:* Is the census taken pursuant to § 2754 of the Code of 1881, a state census.

*Third:* Does § 10, art. 4 of the constitution of the State of Washington apply to justices of the peace in incorporated cities which contain fewer than five thousand inhabitants by the last federal census, but which contain more than five thousand inhabitants by the census taken pursuant to § 2754 of the Code of 1881.

*Fourth:* Does § 25, art. 2 of the constitution of the State of Washington apply and prevent justices of the peace in cities of more than five thousand inhabitants, elected in November, 1890, from receiving the salary provided by the act entitled "An act fixing the salaries of justices of the peace and constables in incorporated cities and towns having more than five thousand inhabitants," etc., approved February 7, 1891.

The first question must be answered in the negative. The act of the legislature therein referred to did not in our opinion make the classification provided for in said act apply to cities organized under special charters theretofore granted by the legislature. By the terms of such act it provided for the organization of cities of the first, second and third class, and authorized each of such classes to exercise certain powers and discharge certain duties therein fully set out and prescribed, and there is nothing in said act to show any intention on the part of the legislature that there

should be any exception to the rule that cities of each of the several classes therein named should be governed by the provisions of such act in relation to such classes. If we were to hold that by said act cities then organized under special laws would fall in one or the other of the classes therein provided for, it would follow either that by the force of said act such cities became re-incorporated thereunder, or else that different cities of the same class would be governed by different charter provisions. That the first is not true is apparent from the fact that the act in question specially provides how existing cities may re-incorporate thereunder, and as to the second we have already seen that the intention is nowhere apparent to have cities of either class governed by dissimilar provisions.

In regard to the second question submitted, it appears from the agreed statement of facts that the city of Port Townsend had less than five thousand inhabitants as shown by the last federal census, but had more than that number according to the census taken in the spring of 1891 under the provisions of § 2754 of the Code of 1881. And to determine whether or not said city comes within the provisions of the act of February 7, 1891, providing for salaries of justices of the peace in cities of five thousand inhabitants or more, so far as population is concerned, it becomes necessary that this question should be decided. In our opinion it must be answered in the negative so far at least as the question relates to the determination of the case made by the statement of facts. That the census provided for in said section of the code may be held to be a state census in a certain sense we do not doubt, but we are clearly of the opinion that the state census referred to in § 1 of said last named act, and in § 10 of art. 4 of the constitution is not the census provided for in said section of the code. The state census therein referred to is one to be provided for by the legislature of the state, and it is made its duty

by the constitution to provide for the same. This duty of the legislature, under the constitution, to provide for a state census in 1895, and every ten years thereafter, would not prevent the legislature from providing for a census which would within the meaning of said act of February 7, 1891, be a state census, but until the legislature does provide for such a census, or for some other proper way in which the population of cities of the state can be determined, there can be no application of the provisions of said act as to salaries of justices of the peace to cities which were not shown to have the requisite population by classification or otherwise under the provisions of said act.

What we have said in relation to the second question is substantially applicable to the third, and compels a negative answer thereto.

As to the fourth question, its answer is clearly not necessary to the determination of this action. We shall, therefore, not now decide it.

In relation to the real merits of this controversy, and the question as to whether cities organized under special charters when properly shown to have more than five thousand inhabitants will come within the provisions of said act providing for salaries of justices of the peace, or whether the provision in the constitution as to such salaries must remain in abeyance until further legislation is had upon the subject, we do not now decide. It is possible that said act may be made applicable to cities of the class under discussion by disregarding some of the language used therein. To accomplish this it would be necessary to construe section one of said act as though the provision as to classification of cities as affecting the question of salaries of justices had been omitted and thereby make section one read "and justices of the peace in incorporated cities and towns having more than five thousand inhabitants," instead of "and justices of the peace in incorporated cities and towns of the

third class having more than five thousand inhabitants."
And in view of the provisions of section 13, and the evi-
dent object of the legislature in the enacting of said law
as evidenced by said section it would, perhaps, be our
duty to so construe it.   The main object of the legislature
as shown by said section thirteen seems to have been to
put in force the provision of the constitution above re-
ferred to, and construing section one as above indicated
would put such provision in operation, not only in cities
organized under the act of March 27, 1890, having the
requisite population, but also in cities with like popula-
tion organized under special charters.   But as we have
said it is unnecessary that this question should be decided,
and therefore we leave its further discussion to a case
where the point shall be directly involved.

The answers which must be given to the special ques-
tions asked as above stated will sustain the *pro forma
judgment* rendered in the court below.   It follows that said
judgment must be affirmed.

ANDERS, C. J., and STILES, SCOTT and DUNBAR, JJ.
concur.