[No. 2220. Decided June 25, 1896.]

R. J. ANDERSON, *Respondent*, v. WHATCOM COUNTY, *Appellant*.

CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — TITLE OF ACTS — COMPENSATION OF JUSTICES OF PEACE.

Art. 4, § 10, of the constitution, providing that, in incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, is self-executing with reference to the matter of population, merely the matter of fixing salaries being referred to the legislature, and the courts are justified in receiving testimony to determine the amount of population.

The act of March 15, 1893, entitled "An act to provide for the economical management of county affairs," and providing that the salary allowed by law to an officer shall not exceed the amount of the legal fees collected on account of such office, does not effect a

repeal of the act of February 7, 1891, fixing the salaries of justices of the peace in incorporated cities having more than five thousand inhabitants, since such subject is not embraced in the title of the act of March 15, 1893, and would be unconstitutional so far as effecting that object is concerned.

Appeal from Superior Court, Whatcom County. Hon. JOHN R. WINN, Judge. Affirmed.

*G. V. Alexander*, for appellant.

*Newman & Howard*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This case involves the right of the justices of the peace in New Whatcom precinct to receive the salary provided by law for cities of the third class. The justice who is the respondent here filed with the auditor of the county of Whatcom his claim for his salary for the month of July, 1895, for the sum of $100, and said claim was audited by the auditor and presented for allowance to the county commissioners of said county, by whom it was rejected for the alleged reason that the said justice was not entitled to any compensation in excess of the fees earned by him, which said fees were ascertained and tendered.

The action was brought against the county by the respondent for the salary claimed, and judgment was rendered in his favor, from which judgment an appeal is taken by the county of Whatcom to this court. All the essential facts relating to the election and qualification of the respondent are admitted, so that it will not be necessary to discuss anything but the law governing the case. Many assignments of error were made by the appellant, but there are four principal grounds upon which appellant rests its defense, viz:

(1.)   That the city of New Whatcom, constituting the precinct in which respondent is justice of the peace, is not an incorporated city or town of the third class, having more than five thousand inhabitants as shown by the last state or federal census, and, therefore, respondent is not entitled under the law to receive any salary from the appellant county, not being a justice contemplated by section 1, page 8, of the Laws of Washington, 1891.

(2.) That respondent is an officer receiving compensation from the appellant county who is required to exact fees for the performance of the duties of his office, and therefore is not entitled to any compensation in excess of the fees collected by him as such officer.

(3.) That at the time of the presentation of the claim by the respondent the county had exceeded its limit of indebtedness under the constitution, and that no money was in the treasury available for the payment of respondent's alleged salary.

(4.) That appellant has paid respondent in full on account of his services, by issuing him a warrant in the sum of $39.45, which was the amount of the fees collected by the justice in said month.

Section 10 of article 4 of the constitution provides that in incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law and shall receive no fees for their own use.   The justice's salary act of February 7, 1891, page 8, provides that justices of the peace in incorporated cities and towns of the third class having more than five thousand inhabitants as shown by the last state or federal census shall receive an annual salary of $1,200.   The contention of the appellant is that this

act must be construed literally, and that either the state or the federal census is the sole criterion for a determination of the population in all cases, while the respondent contends that the question of population of cities of the third class is a question of fact to be ascertained like any other fact in the case. There has been no federal census taken since the organization of New Whatcom precinct.

. The act of February 7, 1891, § 1, provides that—

"The justices of the peace in incorporated cities and towns of the first class shall receive an annual salary of two thousand dollars; justices of the peace in incorporated cities and towns of the second class shall receive an annual salary of eighteen hundred dollars; and justices of the peace in incorporated cities and towns of the third class having more than five thousand inhabitants, as shown by the last state or federal census, shall receive an annual salary of twelve hundred dollars."

The last federal census was taken in May, 1890, before the organization of the city of New Whatcom, and there has been no state census taken of the inhabitants of said city, and the legislature has failed to make provisions for taking such a census as provided for in art. 2, § 3, of the constitution. So that the essential question in this case is whether the constitutional provision in relation to salaries of justices of the peace in cities containing a population of five thousand inhabitants or more is self-executing, or whether it requires legislation to give effect to the constitutional provision. It is insisted by the appellant that this court decided this question in favor of its contention in the case of *Rohde v. Seavey*, 4 Wash. 91 (29 Pac. 768), but while some language may have been used in the opinion in that case, tending to sustain such a contention, we do not think that the

questions decided there were necessarily involved in the decision of the question now under consideration. An examination of the briefs in that case shows that the questions were meagerly presented, and that the question of the self-executing power of the constitution was not presented to the court at all, so that we feel justified in entering upon the discussion of this case as a new question, and we are of the opinion that the provision of the constitution in relation to the salaries of justices of the peace in cities or towns having more than five thousand inhabitants is self-executing.

" A constitutional provision," says Mr. Cooley in his work on Constitutional Limitations (5th ed.), p. 100, "may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced ; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

It seems to us that under this constitutional provision it becomes a fixed fact that cities or towns having more thon five thousand inhabitants are entitled to salaried justices of the peace ; that that fact and the ascertainment of it is directed to the court and not to the legislature ; that to the legislature was directed the fixing of the salary, and the legislature in this instance has fixed the salary under the power given to it by the constitution. The learned author above quoted cited the provisions exempting homesteads from forced sale for the satisfaction of debts as an illustration of self-executing provisions, and says that

"Where, as in California, the constitution declares that 'the legislature shall protect by law from forced

sale a certain portion of the homestead and other property of all heads of families,' the dependence of the provision on subsequent legislative action is manifest. But where, as in some other states, the constitution defines the extent, in acres or amount, that shall be deemed to constitute a homestead, and expressly exempts from any forced sale what is thus defined, a rule is prescribed which is capable of enforcement."

We think that in the case under discussion a rule is equally prescribed which is capable of enforcement. In the case of the homestead the ascertainment of the number of acres or the amount will be determined by the court, and in this case the ascertainment of the fact of the amount of population in the town or city is for the courts and not for the legislature. As is said by the author above quoted,

"Even in such cases, legislation may be desirable, by way of providing convenient remedies for the protection of the right secured, or of regulating the claim of the right so that its exact limits may be known and understood; but all such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it."

In this instance the enactment of the legislature might absolutely destroy the right conferred by the constitution. The legislature has not seen fit to provide for the state census, so that under the statute law as it exists the only means of ascertainment of the population of the city is the federal census, which is taken only every ten years. It might very reasonably occur that a city which did not have quite the requisite five thousand population at the time of the taking of the federal census in 1890 might within six months or a year have the requisite population, and yet this fact could not receive a judicial determination

or announcement for the period of nine or ten years, so that, if the law should receive this construction, its effect would be to destroy or limit the right which the constitution gave.   The test provided for by the legislature must be a reasonable one — one which would carry into effect the constitutional guarantee instead of destroying it.   It was held by the supreme court of California in the case of *People v. Hoge*, 55 Cal. 612, that the constitutional provision that —

"Any city containing a population of more than one hundred thousand inhabitants, may frame a charter for its own government, etc., is self-acting and does not need legislation to give it effect."

In discussing the question the court, says:

"The constitution nowhere provides either expressly or by implication for such legislative interference, and the construction placed upon the provision of the constitution under discussion might result in entirely defeating its operation.   If this ground can be sustained, it would result that hostile action, or even *non-action* on the part of the legislature, would prevent the inhabitants of the city from exercising a power expressly given to them in clear and unmistakable language by the constitution."

It was evidently the intention of the framers of the constitution to provide in harmony with the policy adopted by them of doing away with the fee system, for officers in large cities and towns, and these positive declarations in the constitution cannot be abrogated or destroyed by unreasonable action or non-action on the part of the legislature.   In *Willis v. Mabon*, 48 Minn. 140 (31 Am. St. Rep. 626, 50 N. W. 1110), it was held that an article of the constitution providing that —

" 'Each stockholder in any corporation (excepting those organized for the purpose of carrying on any

kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him,' is self-executing,"

and the court in that case, in adopting a test said:

"The question in every case is whether the language of a constitutional provision is addressed to the courts or the legislature,—does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the legislature for action, then the provision should be construed as self-executing and its language as addressed to the courts."

In this case it is manifest that the provision can be determined by competent testimony outside of any legislative enactment, and that all the language of the constitution indicating that the object is referred to the legislature for action is with reference to fixing the salary, and the fact that this particular portion alone of the subject is especially referred to the legislature excludes the idea that the ascertainment of the population was also referred to the legislature. Many cases have been cited by the respondent which by analogy sustain the idea that the provision of the constitution is self-executing: viz., cases with reference to elections, qualifications of voters, etc., but while they undoubtedly do sustain the contention, the law is well settled without their aid, and we therefore hold that the provision of the constitution with reference to the population is self-executing, and that the

court was therefore justified in receiving the testimony
which it did receive to determine this fact.

The second contention of appellant is based on the
act of March 15, 1893 (p. 427, Laws 1893). This is
an act entitled "An act to provide for the economical
management of county affairs." Section 2 provides
that

" No deputies or assistance of any kind shall be
allowed to any officer or person receiving compensa-
tion from a county unless the same is necessary. No
higher compensation shall be allowed for any deputy
of, or assistance for, such officer or person, than is
necessary. No other expenditure for or connected
with such officer or person or his office or employ-
ment, or the performance of his official duties, or any
of them, than shall be necessary. In case the pay-
ment of any fee or fees is required for the perform-
ance of any duty of such officer or person, the total
amount allowed and expended by any board of county
commissioners for, on account of, or connected with
such person or officer; his office or employment, and
the performance of the duties thereof, including the
salary allowed by law to such officer or person, shall
not exceed the amount of the legal fees collected on
account of such office or employment and the per-
formance of the duties thereof."

It is contended that this act repeals the act of Feb-
ruary 7, 1891, which is entitled "An act fixing the
salaries of justices of the peace and constables, in
incorporated cities and towns having more than five
thousand inhabitants," etc., and that its effect is to
reduce the salary of the officer to the amount repre-
sented by the fees collected by such officer, while the
contention of the respondent is that the act was in-
tended to operate only upon deputies and outside
assistance employed by the county commissioners.
Whatever may have been the intention of the legis-
lature, and it must be conceded that if the law has

the effect contended for it by the appellant so far as its application to justices of the peace is concerned, it would equally apply to all the county officers excepting to the fees of county attorney, which is specially excepted by the provisions of the act, we are satisfied that, if it was intended to change the salaries of county officers, the title is obnoxious to the constitutional provision that no bill shall embrace more than one subject, and that subject expressed in the title. The title to this act is "An act to provide for the economical management of county affairs." We do not think this gives a legal notice of the reduction or change of salaries. Economical management of county affairs would convey the idea of the management on the part of the county commissioners, or of somebody who had power or discretion to manage the business affairs of the county, and would not suggest to the mind the question of salaries in any respect. It could not reasonably be concluded that an act providing for economical management of county affairs could work a repeal of an act entitled "An act fixing the salaries of justices of the peace and constables," so that if it was the intention of the legislature to change the salaries of county officers, that intention is not foreshadowed by the title to the act, and would therefore be unconstitutional so far as effecting that object is concerned.

As to the third contention, we think that, under the rule announced by this court in *Spokane & Eastern Trust Company v. Lavigne*, Treasurer of Stevens county, 14 Wash. 681 (45 Pac. 664), decided June 15, 1896, the finding of the court that there was sufficient incorporated funds to pay this claim must be sustained. This holding in no way conflicts with the holdings of the court in the cases of *Mason v. Purdy,*

11 Wash. 591 (40 Pac. 130); *State, ex rel. Barton, v. Hopkins,* 12 Wash. 602 (41 Pac. 906); *Eidemiller v. Tacoma,* 14 Wash. 376 (44 Pac. 877). The first case simply went to the power of the county commissioners to transfer funds in the absence of legislative authority, and the case of *Eidemiller v. Tacoma, supra,* held that the law was unconstitutional as applied to warrants that were issued prior to the act authorizing the transfer of moneys from the general fund to the salary fund as being in violation of contract. The fourth contention is disposed of by what we have said in relation to the other three.

. We have examined the many errors assigned, and believing that no substantial error was committed by the court in any respect, the judgment will be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.