[No. 21296.  *En Banc.*  February 4, 1930.]

THE STATE OF WASHINGTON, *on the Relation of Perrin Cornell et al., Appellants,* v. HANS J. SMITH *et al., Respondents,* JOHN A. GELLATLY, *Intervener-Respondent.*[1]

*Corbin & Kemp,* for appellants.

*Burt J. Williams, C. B. Hughes, J. D. Oxman,* and *LeRoy McCann,* for respondents.

*The Attorney General, E. W. Anderson, Assistant, Lewis & Church* and *John S. Lynch, amici curiae.*

[1]Reported in 284 Pac. 796.

ON REHEARING.

MAIN, J.—Plaintiffs being regularly elected commissioners of the city of Wenatchee, a city of the third class, which in December, 1924, adopted the commission form of government, instituted this action for the purpose of procuring a writ of mandate requiring defendants Smith and Tibbetts, as clerk and treasurer, respectively, of the city of Wenatchee, to issue to plaintiff Cornell, as mayor of the city, salary warrants in the sum of $166.66 per month and to plaintiff Sterling, as city commissioner, salary warrants at the rate of $150 per month, instead of at lesser rates, which defendants contend are in accord with the law applicable to the situation.

In their complaint, plaintiffs allege that the city of Wenatchee, being a municipal corporation of this state and a city of the third class, in December, 1924, at a general municipal election, adopted the commission form of government; that in January, 1925, at a municipal election held for that purpose, plaintiffs Cornell and Sterling were elected city commissioners pursuant to the form of city government previously adopted, and one C. E. Halbert, now deceased, was elected mayor of the city; that at the first meeting of the new commissioners held in January, 1925, after an investigation made for the purpose of ascertaining and determining what the population of the city of Wenatchee was at the time of the election of the commissioners, it was determined that the population of Wenatchee was greater than eight thousand persons and less than fourteen thousand, and that consequently each commissioner was entitled to an annual salary of $1,800 and the mayor was entitled to an annual salary of $2,000; that, owing to facts specifically alleged in the complaint, plaintiffs for the year 1925 each received a

salary of only $1,000 per year; that in October, 1925, in preparing the city budget for the year 1926, plaintiffs included therein provision for payment of their salaries at the rate of $1,800 per annum for each commissioner and $2,000 per annum for the mayor, and that, during the month of December, 1925, their salaries were fixed at these rates by ordinance regularly passed; that plaintiff Cornell was, in August, 1927, appointed mayor of the city of Wenatchee to fill the vacancy caused by the death of Mr. Halbert; that defendants, as city clerk and city treasurer respectively, refused to draw salary warrants in favor of plaintiffs for the month of December, 1927, at the amounts above referred to, and that plaintiffs were in fact entitled to receive salaries at the rates, respectively, at which the same were fixed by the ordinance above mentioned.

Plaintiffs prayed for a decree adjudging that they, as mayor and commissioner, respectively, of the city of Wenatchee, are entitled to receive salaries at the rates fixed by the ordinance, and asked that defendants Smith and Tibbetts be required by writ of mandate to draw warrants in favor of plaintiffs in payment of their salaries at such rates, and that plaintiffs have judgment against the city of Wenatchee for sums claimed to be due them on account of salary for the year 1925 at the higher rate.

Mr. John A. Gellatly, as a resident and taxpayer of the city of Wenatchee, filed a complaint in intervention alleging his interest in the subject-matter of the litigation, and, on being allowed to intervene in the action, filed a general demurrer to plaintiffs' complaint, to which complaint defendants Smith, Tibbetts and the city of Wenatchee, a municipal corporation, also demurred.

These demurrers being, by the court, sustained and plaintiffs electing to stand upon their complaint, judg-

ment was entered dismissing the action, from which plaintiffs appeal.

This appeal was submitted to department two of this court at the May term, 1928, and a decision affirming the judgment of the lower court rendered September 24, 1928 (*State ex rel. Cornell v. Smith,* 149 Wash. 173, 270 Pac. 306). Thereafter appellants filed a petition for a rehearing of the case before the court *En Banc,* and their petition having been granted, the cause was resubmitted to the entire court at the May term, 1929.

The following sections of Rem. Comp. Stat. are pertinent to the consideration of the questions before us.

"Section 9090. Any city, now or hereafter, having a population of two thousand five hundred and less than twenty thousand, as shown by the last state or federal census or by any special census taken by the city in the manner prescribed in section 8939 may become organized as a city under the provisions of this act by proceeding as hereinafter provided."

"Section 9091. Upon petition of electors equal in number to twenty-five per centum of the votes cast for all candidates for mayor at the last preceding city election of any such city, the mayor shall by proclamation, submit the question of organizing as a city under this act at a special election to be held at a time specified therein, and within sixty days after said petition is filed. If said plan is not adopted at the special election called, the question of adopting said plan shall not be resubmitted to the voters of said city for adoption within two years thereafter."

"Section 9103. The commission shall have and maintain an office at the city hall, or such other place as the city may provide, and their total compensation shall be as follows: . . . in cities having a population of five thousand and less than eight thousand (8,000), the annual salary of the mayor shall be twelve hundred dollars ($1,200), and that of each of the commissioners one thousand dollars ($1,000); in cities having a population of eight thousand (8,000) and less

than fourteen thousand (14,000) the annual salary of the mayor shall be two thousand dollars ($2,000), and that of each of the commissioners eighteen hundred dollars ($1,800); . . . Such salaries shall be payable in equal monthly installments.''

''Section 8932. Municipal corporations are divided into cities and towns; cities are divided into three classes: first, second, and third.''

''Section 8933. Existing corporations organized as cities of the first class shall remain such, and the classes of those which may be or may become cities of the first class shall be determined as follows: Those which on the first day of the month of January last had, and those which hereafter on the first day of the month of January in any year have, according to an official report or abstract of the then next preceding federal or state census, more than twenty thousand inhabitants shall constitute the first class, and shall be organized and governed under the laws relating to cities authorized to frame and adopt their own charters; those which on the first day of the month of January last had, and those which hereafter on the first day of the month of January in any year have, when ascertained in the same way, more than ten thousand and less than twenty thousand inhabitants shall constitute the second class; and those which on the first day of the month of January last had, and those which hereafter on the first day of the month of January in any year have, when ascertained in the same way, more than fifteen hundred and less than ten thousand inhabitants shall constitute the third class; Provided, that when a petition is filed in accordance with section 8886, seeking reorganization of any town or city as a city of a higher class than that indicated by the last preceding federal or state census, then in such case the council or other legislative body to which such petition is presented, shall forthwith cause a census to be taken by one or more suitable persons, of all the inhabitants of such town or city in which census the full name of each person shall be plainly written, and the names alphabetically arranged and regularly numbered in complete series; which census shall be verified before an

officer authorized to administer oaths, and filed with the clerk of the corporation. And if such census shows such city or town to belong to the class named in such petition, the same proceedings shall be had as if such census were a federal or state census. But if such census shows such town or city not entitled to belong to the class named in such petition, no further proceedings shall be had: Provided further, that such city or town may be reorganized as a city or town of the class indicated by such census, upon a proper petition filed within six months from the filing of such census with the clerk of the corporation, without other or further census.''

Sections 8937 and 8938 provide for the holding, on petition, of a municipal election to determine whether or not the city shall advance to the next higher class and for the counting of the votes cast at such election.

''Section 8939. If a majority of the votes is in favor of the advancement, and the corporation, according to the last preceding federal or state census, had not the requisite population, the council shall forthwith cause a census to be taken by one or more suitable persons of all the inhabitants of such city or town; in which census the full name of each person shall be plainly written, and the names alphabetically arranged and regularly numbered in one complete series; which census shall be verified before an officer authorized to administer oaths, and filed with the clerk of the corporation.''

Section 9090, *supra,* in direct terms makes the taking of some one of the three censuses therein enumerated a condition precedent to the initiation by petition of proceedings having for their object the placing before the voters of such city for acceptance or rejection a plan for a commission form of government. This section manifestly contemplates that a census, one of the three kinds specified in the statute, must have been regularly taken in accordance with law

and show that the municipality, in which it is desired to present to the qualified voters for acceptance or rejection a plan for a commission form of government, has a population of not less than twenty-five hundred, and not over twenty thousand, persons.

The law does not make any provision for taking a census of the inhabitants of any municipality for the express purpose of determining whether or not its population is such as to entitle it to establish a commission form of government. The census by which that fact must be determined must have been one taken for some other purpose, either the regular decennial census taken by the Federal government or a census taken pursuant to some statute of the state. The initiation of a plan for a commission form of government depends upon the result of a count of the inhabitants made pursuant to some law other than that enacted for the purpose of permitting certain municipal corporations to adopt such a form of local self-government. Each of the three censuses enumerated in the section last referred to is taken pursuant to a law of such a nature that the results thereof become official statistics of which the courts and public officials will take judicial notice. This at the outset relieves persons advocating or opposing the adoption of the commission form of government from the burden of concerning themselves with the basic fact which determines the right of the municipality to adopt such a form of government.

Once it appears from a census, being one of the three classes enumerated in § 9090, *supra,* that a city has a population in such a number as entitles it to adopt a commission form of government, and the majority of the qualified voters having cast their ballots in favor of the adoption of such form of government and a city election having been held for the purpose

of choosing commissioners, the next question that presents itself is, what, under the law, is the compensation to be paid such commissioners? By § 9103, *supra,* the legislature has fixed such compensation, the same depending in amount upon the population of the city which the commissioners are to govern. This is the question presented by the complaint in this action, appellants alleging therein that immediately following their election, in January, 1925, they, by proper investigation and inquiry, ascertained and determined the population of the city of Wenatchee to be eighty-five hundred persons, or in any event upwards of eight thousand persons, but less than fourteen thousand.

The statute is silent as to any method to be followed in determining the population of a city having a commission form of government with a view to fixing the salaries to be paid the commissioners of such city. Section 8939, *supra,* provides for the taking of a census of all the inhabitants of a city or town for the purpose of determining whether or not such municipality shall advance to the next higher class. The section last referred to is part of a special act referring to the classification of municipal corporations and cannot be held to furnish a method by which the problem presented by the complaint in this section may be solved.

It is manifestly the intent of § 9103, *supra,* that the commissioners therein referred to shall receive the proper salary to which the population of the city which they govern entitles them. The act takes cognizance of the well-known fact that more of the commissioners' time will be required in attending to the affairs of a city having a population of fourteen thousand persons than will be required of commissioners governing a city with a population of less than five thousand. In construing such a law, courts will endeavor to carry into effect its manifest intention for the purpose of in-

suring to cities of this state, under the laws applicable, efficient administration of their governmental affairs.

If, just prior to the election of appellants as commissioners of their city, a census of any one of the three classes referred to in § 9090 had been taken and had shown that the city of Wenatchee had a population of more than eight thousand and less than fourteen thousand persons, the salaries to be paid appellants, for their first term, at least, would thereby have been fixed and determined. No such census, however, had been taken since the Federal census of 1920, according to which Wenatchee had, at that time, a population of six thousand three hundred and twenty-four persons.

A careful examination of the questions presented by this appeal convinces us that the question of the population of a city having a commission form of government is a question of fact to be determined as such, either primarily by the commissioners themselves, subject to review in the courts, or, on the other hand, in proper cases, by the courts in the first instance. A Federal census might show that a city had a population of eight thousand persons, and in five years the population might shrink to a lesser number, in which event it would seem that an interested taxpayer could institute proceedings in the superior court looking toward a reduction of the salary being paid the commissioners to such a rate as they would be entitled to receive based upon the actual population of their city. So, likewise, if the population of a municipality increases after the taking of a Federal or other census, the commissioners should be paid such salary as, under the increased population, they would, under the law, be entitled to receive.

We find no statute or principle of law which prohibits the commissioners themselves from, by some

method, determining the population of the city as a basis for establishing the salaries which they shall receive. The commissioners do not determine their salaries, which are fixed by the law, but we conclude that the commissioners may, by some adequate plan of enumeration adopted and carried out in good faith, determine the population of their city as a basis for determining the salaries to be paid.

The following opinions of this court support our conclusion as above stated.

A justice of the peace for New Whatcom precinct sued Whatcom county, claiming a monthly salary on the ground that his precinct comprised an incorporated city having more than five thousand inhabitants, and that therefore, under § 10, art. IV of the constitution, he was entitled to receive a salary instead of fees. Section 1 of the act of February 7, 1891 (Laws of 1891, p. 8), provided that justices of the peace in incorporated cities of the third class having more than five thousand inhabitants should receive an annual salary of twelve hundred dollars. The Federal census last taken before the election at which plaintiff was chosen justice was taken before the organization of the city of New Whatcom. No state census had been taken, and this court notes that the legislature had failed to make provision for taking any census such as is provided for in § 3, art. II of the state constitution.

The county contended, *inter alia,* that, as it did not appear from the last state or Federal census that New Whatcom precinct was an incorporated city having more than five thousand inhabitants, plaintiff was not entitled to receive a salary, but was limited to the fees collected by his office, and that the act of the legislature fixing salaries of justices of the peace must be construed literally, and that either the state or the Federal census was the sole criterion for a determina-

tion of the population in all cases, while the respondent justice contended that the question of population was a question of fact to be ascertained like any other fact in the case. In the course of its opinion, this court, speaking through Judge Dunbar, says:

"It seems to us that under this constitutional provision it becomes a fixed fact that cities or towns having more than five thousand inhabitants are entitled to salaried justices of the peace; that that fact and the ascertainment of it is directed to the court and not to the legislature; that to the legislature was directed the fixing of the salary, and the legislature in this instance has fixed the salary under the power given to it by the constitution. . . .

"In this instance the enactment of the legislature might absolutely destroy the right conferred by the constitution. The legislature has not seen fit to provide for the state census, so that under the statute law as it exists the only means of ascertainment of the population of the city is the federal census, which is taken only every ten years. It might very reasonably occur that a city which did not have quite the requisite five thousand population at the time of the taking of the federal census in 1890 might within six months or a year have the requisite population, and yet this fact could not receive a judicial determination or announcement for the period of nine or ten years, so that, if the law should receive this construction, its effect would be to destroy or limit the right which the constitution gave. . . .

"In this case it is manifest that the provision can be determined by competent testimony outside of any legislative enactment, and that all the language of the constitution indicating that the object is referred to the legislature for action is with reference to fixing the salary, and the fact that this particular portion alone of the subject is especially referred to the legislature excludes the idea that the ascertainment of the population was also referred to the legislature. Many cases have been cited by the respondent which by analogy sustain the idea that the provision of the con-

stitution is self-executing: viz, cases with reference to elections, qualifications of voters, etc., but while they undoubtedly do sustain the contention, the law is well settled without their aid, and we therefore hold that the provision of the constitution with reference to the population is self executing, and that the court was therefore justified in receiving the testimony which it did receive to determine this fact." *Anderson v. Whatcom County,* 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137.

In the course of its opinion, the court quotes the following from the act of February 7, 1891, § 1:

" 'The justices of the peace in incorporated cities and towns of the first class shall receive an annual salary of two thousand dollars; justices of the peace in incorporated cities and towns of the second class shall receive an annual salary of eighteen hundred dollars; and justices of the peace in incorporated cities and towns of the third class having more than five thousand inhabitants, as shown by the last state or federal census, shall receive an annual salary of twelve hundred dollars.' " *Anderson v. Whatcom County,* 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137.

The case is authority for the proposition that the act of the legislature referred to does not make the last state or Federal census an exclusive criterion by which the population of a town shall be determined for the purpose of ascertaining whether or not a justice of the peace therein shall receive an annual salary or fees. It was held that the trial court was justified in receiving testimony as to the actual population of the town at the time of the hearing, and the judgment of the superior court holding that the justice was entitled to receive the salary which he claimed was affirmed.

In the case of *State ex rel. Smith v. Neal,* 25 Wash. 264, 65 Pac. 188, 68 Pac. 1135, a proceeding by way of an application for a writ of mandate similar to that now before us, it was held that:

" . . . the mere fact that the legislature had failed to point out the means of ascertaining the population of a county should not defeat the plain provisions of the law and the mandates of the constitution,"

and that the trial court was justified in receiving proof of the population of Skagit county as of a certain date in order to determine the proper salary to be paid the regularly elected clerk of that county. In this case the proof received was the report of the Federal census for 1900, but the decision is in point as holding that the trial court properly received proof of the population of the county and determined the clerk's salary accordingly.

Appellant, in the case of *State ex rel. Maltbie v. Will*, 54 Wash. 453, 103 Pac. 479, 104 Pac. 797, sought a writ of mandamus requiring the auditor and commissioners of Douglas county to draw and issue to him, as clerk of that county, a salary warrant in an amount which he alleged represented the monthly salary which, under the law, he was entitled to receive. Appellant alleged that he had been elected clerk of Douglas county in November, 1902, and reelected in November, 1904; that he had served these two terms from January 9, 1903, to January 14, 1907, during which time he was paid a salary at the rate of $1,300 per annum on the theory that Douglas county was a county of the sixteenth class; that, at the date of his first election, the population of the county was under ten thousand; that on March 1, 1903, the population was 10,168, and that on June 1, 1906, it was 16,310; that on August 1, 1902, the board of county commissioners, by order entered and recorded, declared Douglas county to be in the twelfth class; that appellant had demanded salary at an increased rate, which demand had been rejected.

This court held that, as on November 4, 1902, the date of appellant's first election, Douglas county had a population of 9,183, it was then a county of the sixteenth class and appellant's salary was $1,300 per annum, to which salary, and no more, appellant was entitled from his induction into office January 9, 1903, until the population increased to 10,168 March 10, 1903, which population entitled the county to rank as one of the fifteenth class. It was further held that, under the state constitution, art. XI, § 8, and art. II, § 25, appellant's salary could not be so increased during his term. It was, however, held that appellant was entitled to receive, during his second term, salary at the higher rate in accordance with the finding of the board of county commissioners to the effect that the population of the county had increased.

This court quoted with approval from the case of *State ex rel. Smith v. Neal, supra,* stating that it was in that case held that the county commissioners and superior court were authorized to determine the population "as it existed when the county officers were elected, and that they should be compensated accordingly." This case is authority for the proposition that the board of county commissioners of a county could, as the law then was, by their order determine the population of their county and that the salaries of county officials, subject to the constitutional provisions above referred to, should be paid upon the basis of the population as determined by the commissioners.

In the more recent case of *James v. McMillan,* 113 Wash. 644, 194 Pac. 823, it was held that, while, under ch. 21, Laws of 1905, p. 42, the rating of a county as a county of the first class could be determined only by the last preceding Federal census, the county commissioners had authority, after making an investigation of the facts, to determine that their county had a

population sufficient to rate it as a county of the second class, and that county officials should be paid accordingly.

In the case last cited, appellants, as residents and taxpayers of Whatcom county, sought to restrain the payment of increased salaries to certain county officials. From a judgment of dismissal entered after sustaining a demurrer to their complaint, appellants appealed to this court. From the complaint, it appeared that two of the three county commissioners, as well as the other county officers, were elected in November, 1918, their terms to commence January 13, 1919; that, according to the 1910 Federal census, Whatcom county had at that time a population of approximately 49,500 and that no other Federal or state census had, at the time respondents were elected to their respective offices, in November, 1910, been taken, and that, according to the 1910 census, Whatcom county was classified as a county of the fifth class and the county officers were entitled to receive the salaries designated by law for such a county; that January 10, 1919, certain of the county officials filed with the board of county commissioners a petition requesting the board to find and determine the population of the county with a view to a reclassification thereof; that January 16, 1919 (a date subsequent to the induction into office of the officials chosen at the preceding election), the county commissioners considered the petition and entered a finding to the effect that the county, November 1, 1918, had a population of approximately 79,600, and that subsequently the county officials, including the two county commissioners chosen at the November election, but exclusive of the county commissioner who was a holdover, had been paid at the rate prescribed by law for counties of the first class.

It was further alleged that, according to the 1920

Federal census, Whatcom county had a population of 50,585, a figure very much less than that at which in 1919 the board of county commissioners had estimated the same.

This court, in deciding the questions presented on the appeal, discussed at length the different cases previously decided bearing upon the questions to be determined. In considering the opinion of this court in the case of *Maltbie v. Will, supra,* this court quoted with approval that portion of the opinion in which it was held that the population of a county could not be determined during the term of a county officer and his salary raised as a result of the finding during his current term, but that the population might be determined "as it existed when the county officers were elected, and that they should be compensated accordingly." The record in the *Maltbie* case is silent as to whether or not the salaries of the county commissioners were also sought to be increased, but from the complaint in the case now under discussion, it clearly appears that the two newly elected county commissioners were themselves receiving the increased compensation.

It was concluded that, while the county commissioners of Whatcom county, on account of the peculiar wording of the legislative enactment defining counties of the first class, could not by their order determine the population of their county and raise the same to the last mentioned classification, their order was effective to raise the county to one of the second class. Art. XI, § 8, of the constitution of this state, which provides, among other things, that:

"The salary of any county, city, town, or municipal officers shall not be increased or diminished after his election or during his term of office, nor shall the term of any such officer be extended beyond the period for which he is elected or appointed, . . ."

does not apply to the situation disclosed by the complaint in this action, as appellants do not seek to raise their salaries during their terms of office, but only to establish the amount of salary which under the law they were entitled to receive, respectively, from the beginning of their terms until the end thereof. *State ex rel. Maltbie v. Will,* and *James v. McMillan, supra.*

This court having held that the Federal census is not an exclusive criterion by which the population of a town or a county may be determined for the purpose of fixing the salaries due to town or county officers, it follows that city commissioners chosen under the commission form of government may likewise determine the population of their municipality to be used as a basis for the computation of salaries, when the same depend upon population.

It is not contended that appellants could, by making a finding as to the population of their city, increase their salaries during their respective terms of office, and this they do not seek to do. After their induction into office, they made a finding as to the population of their city, just as in the case of *James v. McMillan, supra,* the commissioners of Whatcom county, after their induction into office, made a finding as to the population of their county, both findings having been for the purpose of determining what salaries the city or county officers, respectively, were entitled to receive from the very beginning of their terms of office.

Such action does not fall within the ban of the constitution, and under the authorities above cited, we now hold that the commissioners of respondent city had authority to determine by some reasonable and adequate method, subject, of course, to review by the courts, the population of their city at the time of their election, for the purpose of fixing salaries which the

commissioners should receive during the entire term for which they have been chosen.

The allegations of appellants' complaint being confessed by the demurrer, it stands conceded, for the purpose of this appeal, that the investigation and inquiry conducted by appellants was proper and adequate.

It is true that, as argued by respondents, where the legislature has provided a method of determining population for the purpose of fixing salaries, that method is exclusive and must be followed, but we are of the opinion that the different kinds of censuses enumerated in § 9090, *supra,* refer only to the method of determining whether or not a city has such a population as entitles it under the law to proceed to adopt a commission form of government. This leaves the method of determining the population of the city, for the purpose of fixing the compensation of the commissioners, to be determined by the general rules of law, and under the authorities cited, we hold that the commissioners of the city may proceed to determine that question, subject, of course, as we have stated, to judicial review.

This opinion up to this point was written by a member of the court other than the one whose name appears signed hereto as the writer. Anything said in the foregoing opinion to the effect that the commissioners, after their election and qualification, had the power to determine the population of the city and thereby increase their own salaries during the term for which they had been elected will be considered deleted.

The commissioners had the right to find the fact as to the population of the city, but they did not have the right to thereby increase their own salaries during the term for which they had been elected and were then serving. If they could do this, it would make them

judges in their own cause, and this is contrary to sound public policy.

In *Kendall v. Stafford,* 178 N. C. 461, 101 S. E. 15, the city of Greensboro was a city operating under a commission form of government. The charter provided for three commissioners, one of whom should be mayor, and specifically fixed the salaries of the commissioners and the mayor. Subsequent to the adoption of the charter, the legislature of North Carolina passed an act in which it was provided that the governing body of any city could, by ordinance, "fix the salary of the mayor of such city or heads of departments of other officers." Under this statute, the commissioners and the mayor sought to increase their salaries from the amount specified in the charter to a greater sum, and it was there held that this could not be done. The facts in that case are not exactly parallel to the case now before us but, in the opinion in the case, there are some observations which peculiarly fit the situation. It was there said:

"The public policy of the state, found in the statutes and judicial decisions, has been pronounced against permitting one to sit in judgment on his own cause, or to act on a matter affecting the public when he had a direct pecuniary interest, and this is a principle of the common law which has existed for hundreds of years.

" 'It is an ancient maxim, applicable in all cases, civil or criminal, where judicial functions are to be exercised, whether in proceedings of inferior tribunals or in courts of last resort, that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's sense of justice that it is said by Lord Coke to be a natural right so inflexible that an act of parliament seeking to subvert it would be declared void.' 15 R. C. L. 527.

" 'Under the fundamental maxim that no one ought to be judge in his own cause, if we had no statute law upon the subject, no judge, whether probate or other,

could take jurisdiction of any cause wherein he was a party, or otherwise had a pecuniary interest. This principle is of universal application as a rule of the common law, and subject thereto must be the exercise. of all the powers of a judge. Broom's Legal Maxims, 118; 1 Hopkins Ch. Rep., 1; 2 Strange's Rep. 173.

" 'In accordance with this principle, in every grant of jurisdiction, it is always to be understood that the powers conferred are limited by the tacit exception that the judge is not to decide his own cause.' *Gregory v. Ellis,* 82 N. C. 226.

" 'The common law forbade a man being the judge of his own cause, as 'if an act of Parliament give a man power to try all causes that arise within his manor of Dale, yet, if a cause should arise in which he himself is a party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel.' 1 Blackstone, 91 . . . No one ought to be a judge in his own cause; and so inflexible, and so manifestly just, is this rule that Lord Coke has laid it down that 'even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void, in itself; for *jura naturae sunt immatubilia,* and they are *leges legum.*'

" 'This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise.

" 'It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation, and when his own rights are in question, he has no authority to determine the cause.' *White v. Connelly,* 105 N. C. 70.' "

In the case of *James v. McMillan,* 113 Wash. 644, 194 Pac. 823, the question of whether the commissioners had the power to find the fact of the population of the county, and thereby increase their own salaries during the term that they were then serving, was not raised, considered or determined. It cannot be said

that that case supports the view that the commissioners may, during their term of office, find the fact of population and thereby automatically increase their salaries for that term.

The judgment will be affirmed.

MITCHELL, C. J., FRENCH, and MILLARD, JJ., concur.

HOLCOMB, FULLERTON, and TOLMAN, JJ., concur in the result.

BEALS, J. (dissenting)—In my opinion, that portion of the foregoing decision which is referred to therein as written by a member of this court other than the judge whose name appears signed thereto, correctly states the law, and no part thereof should be deleted. I concur in this part of the opinion. I dissent from the latter portion of the opinion, written by the signer thereof, and from the conclusion reached by the majority, as I am satisfied that the action of the commissioners in finding the population of their city, as stated in their complaint, the allegations of which stand confessed by the demurrer which was sustained by the trial court, did not in law constitute increasing their own salaries during the term for which they had been elected.

In my opinion, the judgment appealed from should be reversed, and I accordingly dissent from the conclusion reached by the majority.

PARKER, J., concurs with BEALS, J.