[No. 18965. Department Two. April 15, 1925.]

LEE MORRIS, *Appellant*, v. ROY J. FAVOR *et al., as Board of County Commissioners of Asotin County, Respondents.*[1]

COUNTIES (15)—DIVISION—COMMISSIONER'S DISTRICTS—DUTY OF COUNTY BOARD TO REDISTRICT—DISCRETION—REVIEW. Rem. Comp. Stat., § 4037, requiring redistricting of commissioner districts containing fractional voting precincts, and providing that "such districts" shall comprise as nearly as possible one third of the population of the county, does not require redistricting in counties in which there are no fractional voting precincts, but leaves it wholly discretionary with the county commissioners to redistrict a county for the purpose of equalizing the population.

MANDAMUS (35)—TO COUNTY BOARD—MATTERS OF DISCRETION. Mandamus does not lie to control the discretion of the county commissioners in the legislative and political matter of redistricting the county.

Appeal from a judgment of the superior court for Asotin county, McCroskey, J., entered September 4, 1924, upon sustaining a demurrer to the complaint, dismissing an action to compel a county board to redistrict the commissioners' districts of a county. Affirmed.

*E. J. Doyle,* for appellant.

*John C. Applewhite,* for respondents.

[1]Reported in 234 Pac. 1040.

HOLCOMB, J.—No better introduction to the nature of this case and the questions of fact and law involved can be made than by setting out the very able opinion of the trial judge filed in the case, which follows:

"By his complaint plaintiff seeks a writ of mandate commanding the defendants, as the board of commissioners of Asotin county, to re-district the commissioner districts of said county. He alleges in substance that it is divided into three commissioner districts; that over one-half of the population of the county now resides in the third district and has for many years resided therein; that the first and second districts do not together contain more than one-third of the total population of the county; that the inhabitants of the county have requested the board of county commissioners to re-district the districts so as to secure a more equitable representation on the board of commissioners according to the population, but that the board has arbitrarily refused to comply therewith; that at the last general election only 475 votes were cast in the first district, 218 in the second, and 1,423 in the third, and that no change has been made in the districts since the organization of the county; that since the organization of the county the third district, which includes the city of Clarkston and the surrounding tracts, have become thickly settled, more than doubling the original population and more than doubling the assessed valuation for the purpose of taxation.

"The defendants interpose a demurrer to the complaint upon the grounds that the court has no jurisdiction of the persons of the defendants or of the subject-matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action.

"By the constitution a county is made the unit of government (Article II, Section 4) and the power is vested in the legislature to provide for county government. The constitution only casually mentions the governing body of a county.

"Since the constitution has left the matter of county government entirely to the will of the legislature, I

have no doubt that body could lawfully, should it see fit, repeal all existing laws on the subject and by general enactment adopt some other method possibly more inimical to 'a representative form of government' or 'free and equal suffrage' than appears by the complaint to exist in Asotin county.

"Plaintiff relies upon his construction of the statute (section 4037, Remington's Codes) for his right to the writ. He urges that this section by words and by necessary implication requires that each commissioner district shall contain as nearly as possible one-third of the population of the county, and that it is the duty of the board thereunder to so divide the county that this result will obtain.

"He argues that while it is in the discretion of the board to re-district the county, it is its manifest duty to do so, and that under the facts here, an abuse of discretion is shown by its refusal.

"As I see it, the only question involved is this: does the law impose upon the board a duty resting on a discretion to be exercised or which may be exercised in the performance of an act that in contemplation of law should be performed? In other words, does the law manifest a legislative intent that the three commissioners districts in each county of the state shall contain approximately the same population, or is the right to re-district merely permissive?

"Plaintiff in his brief only cites section 4037 (Laws of 1893, p. 63) and no other state or territorial law. The territorial Session laws are not available here, but in any event it seems unnecessary to go further than the beginning of statehood; and this is especially true in this case where the county of Asotin is involved, which was organized in territorial days and still retains its original commissioner districts.

"The first law on the subject of commissioner districts enacted after statehood was that of March 26th, 1890 (Laws of 1890, p. 317). This law recognized or approved existing commissioner districts, and its evident purpose was to require division to be made in new counties not heretofore districted, restrict boards in districting or re-districting counties in connection

with voting precincts and to give them an opportunity if desired to redistrict counties theretofore districted. Such districts so created must comprise not less than two voting precincts or townships of compact and contiguous territory and embrace as nearly as possible one-third of the population of the county.

"By this act all territorial legislation on the subject was specifically repealed, which fact is worthy of notice.

"The act of 1893 (Laws of 1893, p. 63, Sec. 4037, *supra*) is the next legislation referring to division of commissioner districts and makes no change as regards population. It also recognized and approved the existing districts except such as contained one or more fractional voting precincts, required the commissioners in such counties to re-district the same at their first session after the law went into effect or within three months thereafter, and provided that such districts (in the cases specified) comprise as nearly as possible one-third of the population of the county. It further provided that the lines of districts provided for therein shall not be changed oftener than once in four years, and then only when a full board is present.

"The evident purpose of the legislature by this act was to correct a cutting or division of voting precincts and not to cure a lack of uniformity in population. The question of population is only incidental to counties containing the affected precincts and those which boards of commissioners might decide to re-district under the permission granted in the act and had reference to such only.

"The 'Discretion' granted by the law to the commissioners to re-district a county such as this is in no sense made a duty. The word 'permission' is more apt. There is nothing mandatory in the law. When Washington was admitted into the Union the legislature accepted Asotin county as it came into the state and pronounced it perfect, leaving it to the successive boards to re-district, if they so willed, but imposing no duty upon them to do so.

"If a general policy of the legislative department of the state is deducible from its enactments on the

subject of commissioner districts they would seem to indicate to me that stress was laid upon the county unit of government rather than that of the commissioner districts; and also a lack of interest in the question of equal population. While each district nominates its own commissioner and he must reside therein, yet he is elected by vote of the whole county, and is in no sense representing the district, but is the servant of the county as a whole.

"Plaintiff places much stress upon the words in section 4037, 'Such districts shall comprise as nearly as possible one-third of the population of the county'; and argues that the words 'shall comprise' are mandatory as to all districts. It would seem to me by all rules of construction that 'such' refers to the districts theretofore in the section required to be created, not to such as the section itself clearly recognized as already lawfully created.

"It may be true, as suggested by plaintiff, that the judgment of one commissioner may be over-borne by that of the two others residing in other parts of the county, and that the population in the district represented by the one greatly exceeds that in the other two districts, but even that would not empower a court to require the board to re-district the county. If the system is wrong it can be remedied by the legislature only, not by the courts.

"The legislature not having indicated an intention of requiring each commissioner district of the respective counties of the state to contain approximately the same population, but only those having certain defects or those erected in newly created counties, and not having indicated that population is a factor in districts already legally in existence, I conclude that there is no legal obligation upon defendants to re-district Asotin county, nor will there be until the legislature deems it wise to enact new or additional legislation on the subject, and the court has no authority to issue the writ prayed for.

"Aside from the conclusion above expressed, and accepting the reasoning, text and case law cited by and most favorable to plaintiff, I can conceive of no author-

ity in the court to compel defendants to act in this case.

"I conclude that the demurrer should be sustained, and an order to that effect may be served and presented, reserving exceptions to plaintiff."

Appellant refusing to plead further, the action was dismissed and this appeal taken.

Of course, appellant contends, and most earnestly, that the trial court erred in his construction of the statutes in effect, and insists that he has a remedy by mandamus, and that the writ should issue.

We can add little or nothing to the reasoning and construction of the statute by His Honor. Any language we might employ in discussing the matter would be merely superfluous.

The case of *Anderson v. Whatcom County,* 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137, relied upon by appellant, has no application here for the reason that there a constitutional duty existed for which the legislature had not provided, and this court merely held that the right of an incumbent to the salary designated by the constitution should not be precluded by the inaction of the legislature.

The same is true in principle in *James v. McMillan,* 113 Wash. 644, 194 Pac. 823, where the excess of action was that of the board of county commissioners under a statutory duty.

We have also said:

"The general rule is well established that the court cannot review the discretion which has by law been vested exclusively in inferior tribunals, and mandamus will therefore not lie to compel performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required; because the state has, as in this instance, determined upon and specified the officers upon whose judgment on the questions sub-

mitted to them the state is willing to rely." *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544.

It is plain that, under § 4037, Rem. Comp. Stat. [P. C. § 1686], the discretion is wholly that of the boards of county commissioners, except as limited therein, as to the division of counties into commissioners' districts. It is wholly a legislative and political question.

The opinion of the trial court is correct, and the judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, FULLERTON, and MITCHELL, JJ., concur.