[No. 29805. Department Two. March 22, 1946.]

MARTIN MISICH et al., *Respondents*, v. FRANK McGUIRE et al., *Appellants*.[1]

*Joseph H. Smith* and *John T. McCutcheon*, for appellants.

*J. L. Rucker* and *J. P. Hunter*, for respondents.

[1]Reported in 167 P. (2d) 462.

BLAKE, J.—The plaintiffs are owners of one hundred twenty-eight acres of land in drainage district No. 1 in Snohomish county, of which defendants are the duly elected, qualified, and acting commissioners. The district was organized in 1911 pursuant to the provisions of chapter 115 of the Laws of 1895, p. 271 (Rem. Rev. Stat., § 4298 [P. P. C. § 511-1] *et seq.*).

The district embraces some three thousand acres of land south of the Snohomish river. It extends west along the river from a point near the town of Snohomish for a distance of three miles, and to the foothills to the south. The land in the district is low, and surface waters drain across it from the foothills towards the river. The land bordering the south bank of the river is several feet higher than the rest of the land in the district and forms a sort of rim, which makes a basin of the land between it and the foothills, from which surface waters cannot escape to the river unless resort is had to artificial drainage.

The plan adopted at the time the district was organized consisted of three ditches extending approximately from the foothills to the river, where floodgates were installed to carry off the surface waters and to prevent water from the river backing into the basin. The water level in the river is regularly affected by the tides and frequently by freshets. The floodgates were constructed to operate like doors, so that, when there was a freshet, or when the tide was in and the water level of the river became higher than that in the ditches, the gates would automatically close. They would not reopen until the water level in the river fell below that in the ditches. Of course, when the gates were closed, surface waters accumulated in the lowlands of the district. So, to remedy this, the district voted to install pumps to carry off the surface waters accumulating when the gates were closed.

The plaintiffs' land is located in the northwest corner of the district and is drained by what is called ditch No. 3. A plan for the improvement of this ditch and relocation of a part of it was evolved in 1936. In order to carry out the plan, plaintiffs granted an easement to the district for a dis-

tance of two hundred fifty feet along the west boundary of their land.

The northerly end of the strip of land covered by the easement is bounded by the Great Northern right of way, which extends in an easterly-westerly direction through plaintiffs' land along the river. Ditch No. 3 extends under the railroad tracks to the river. In consideration of the easement granted, the district agreed to certain specifications in the construction and maintenance of the ditch, the terms of which are not material to the question raised on appeal. As a part of the reconstruction program, a new pump was installed to carry off the surface waters. Up to 1936, there seems to have been no question raised as to the adequacy of the drainage of plaintiffs' land. Subsequently, difficulties arose which, in 1943 and 1944, caused the flooding of a portion of plaintiffs' land and substantial damage to crops.

The plaintiffs brought this action for a mandatory injunction requiring the defendant commissioners to improve and repair the ditch in compliance with the obligations assumed by the district under the easement, and to maintain and operate the ditch in such manner as to prevent flooding their land. Upon trial of the issues presented, the court held that the evidence failed to show that there had been any breach of the obligations assumed by the district under the easement. Nevertheless, the court entered a mandatory injunction in the following terms:

"IT IS HEREBY ORDERED, ADJUDGED and DECREED that the above-named defendants, Frank McGuire, Floyd Laramer and Frank X. Buhler, and their successors, as commissioners of Drainage District No. 1, a municipal corporation of the County of Snohomish, State of Washington, be, and they hereby are, permanently enjoined and restrained from maintaining the floodgates at the outlet of the drainage ditch known as the McGuire Ditch in such a way as to permit waters backing onto the lands of plaintiffs between April 1st and October 1st of each year, and said defendants, and their successors, as such commissioners are

"HEREBY ORDERED and REQUIRED to either keep said floodgates closed or to install such protective devices as will insure against plaintiffs' land being flooded by river water backing into said drainage ditch, and

"It Is Further Hereby Ordered, Adjudged and Decreed that said defendants, and their successors, as such drainage commissioners, be, and each of them hereby are, permanently enjoined and restrained from permitting gravel and other debris to remain in the flume situated in the said McGuire Ditch in any substantial quantity after the 1st day of May of each year hereafter, and

"It Is Hereby Further Ordered, Adjudged and Decreed that said defendants, and their successors, as such commissioners, be, and they hereby are, Ordered and Required to operate the pump at the outlet of said McGuire Ditch in such a manner that the level of the surface of the water in said ditch be maintained at all times between April 1st and October 1st of each year, except during abnormally wet weather, at least 32 inches below the level of the surface of all portions of plaintiffs' tilled ground, such to apply to the entire ditch as it crosses plaintiffs' land west of bridge across drainage ditch which runs east and west across plaintiffs' land."

The defendant commissioners appeal.

As we view the evidence, the question presented on appeal is essentially one of law—and of statutory construction at that. As we see it, the question is whether a court may, by mandatory injunction, direct drainage district commissioners to perform duties which, in the exercise of reasonable diligence, they should perform in carrying out the functions of their office.

Of course, the general rule is that courts will not undertake by writ of mandate to direct an officer of a municipal corporation as to *how* he should perform any duty involving the exercise of his discretion. No better statement of the rule can be found than the following in *Morris v. Favor*, 134 Wash. 75, 234 Pac. 1040, quoting from *State ex rel. Brown v. Board of Dental Examiners*, 38 Wash. 325, 80 Pac. 544:

" 'The general rule is well established that the court cannot review the discretion which has by law been vested exclusively in inferior tribunals, and mandamus will therefore not lie to compel performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required; because the state has, as in this instance, deter-

mined upon and specified the officers upon whose judgment on the questions submitted to them the state is willing to rely.'"

Measured by this rule, there was nothing in the conduct of appellants, as commissioners of the district, that could be characterized as arbitrary or capricious.

■ However, implicit in the rule as stated and applied in *Morris v. Favor, supra,* is the principle that municipal corporations are merely creatures of legislative enactment, and the powers of their officers are subject to such limitations as the legislature may see fit to impose. 1 Dillon on Municipal Corporations (5th ed.) 617, §§ 355, 357; 1 Cooley's Constitutional Limitations (8th ed.) 393 *et seq.*; 20 Am. & Eng. Ency. of Law, 1152; 43 C. J. 143, Municipal Corporations, § 123; 37 Am. Jur. 720, Municipal Corporations, § 111; *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 222, 163 Pac. 744.

■ In recognition of this principle, as well as in recognition of the principle of the limitation upon the courts to control the conduct of municipal officers by writs of mandate, the legislature saw fit to incorporate in chapter 115, Laws of 1895, as § 40, p. 296 (Rem. Rev. Stat., § 4340 [P. P. C. § 511-113]), the following:

"The superior court may compel the performance of the duties imposed by this act, and may, *in its discretion,* on proper application therefor, *issue its mandatory injunction for such purpose."* (Italics ours.)

We think it is too clear for argument that, by incorporating this provision in the act, it was the purpose of the legislature to subject the administrative and discretionary functions of the commissioners to the supervision of the superior court. And it is equally clear that it was the purpose of the legislature to vest the court with discretionary power in exercising supervision over the administrative and discretionary functions of the commissioners.

■ We do not understand that appellants seriously contend that the court—granting its power to issue a mandatory injunction—abused its discretion in entering the decree from which the appeal is taken. It may be well to say,

however, that, in the operation of the floodgates, there was evidence of a lack of diligence on the part of the commissioners in keeping the ditch free from debris and in maintaining the pump at its highest efficiency, amply sufficient to justify the court in exercising the power conferred upon it by the statute in the particulars covered by the mandatory injunction.

Decree affirmed.

DRIVER, C. J., BEALS, and ROBINSON, JJ., concur.

JEFFERS, J. (dissenting)—I am of the opinion there was no ground for injunctive relief in this case, and that the effect of the decree entered was to tell the commissioners how they should perform a duty involving the exercise of discretion. I therefore dissent.

### ON REHEARING.
[*En Banc.* August 15, 1946.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.

MILLARD, J. (dissenting)—I dissent. The judgment should be reversed and the cause remanded with instructions to dismiss. The opinion in this case announces a rule which is not supported by the authorities. This court now enunciates the rule that the court may review the discretion which has by law been vested exclusively in a municipal corporation, and therefore mandamus will lie to compel performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required. Our opinions are consistent solely in their inconsistency. We delight in promulgating rules, but, seemingly, delight more in breaking them.