[No. 31140.   Department Two.   November 9, 1949.]

GERALD MILLER *et al.*, *Respondents*, v. THE CITY OF SPOKANE *et al.*, *Appellants.*[1]

[1]Reported in 211 P. (2d) 165.

G. M. Ferris, B. A. Farley, and Paul F. Schiffner, for appellants.

Wilmot W. Garvin and Clarence M. George, for respondents.

Thomas I. Oakshott, amicus curiae.

SIMPSON, C. J.—Plaintiffs, operators of pinball machines, sought by this action to restrain the city of Spokane and certain of its officers from arresting or molesting plaintiffs while in the possession of, and operating, the machines in the city of Spokane. It was contended in the answer of defendants that the machines were gambling devices and, therefore, prohibited by law.

A trial to the court resulted in the issuance of a permanent injunction which restrained defendants from molesting or arresting plaintiffs or others similarly situated for having in their possession, and operating, pinball machines in the city of Spokane. Defendants then appealed to this court, and, in so doing, assign as error the action of the superior court in entering its decree.

The facts, gathered from the admitted portions of the pleadings and the statement of facts, are these:

December 29, 1947, the city commissioners of the city of Spokane passed two ordinances. One, numbered C 9441, prohibited the playing of pinball machines by minors, and required that, before any pinball machines should be placed in operation, the operators must have the approval of the commissioner of public safety. The other ordinance, num-

bered C 9438, amended ordinance numbered C 8352. These last mentioned ordinances authorized the operation of pin-ball machines and imposed a tax upon them.

March 28, 1949, the city commissioners passed ordinance No. C 10078. This act repealed ordinance No. C 9441, and prohibited the possession, maintenance, conduct, operation or use of pinball machines. Prior to the effective date of ordinance No. C 10078, the voters of the city of Spokane filed, in accordance with the provisions of the city charter, a referendum petition signed by the required number of voters, which challenged and sought to submit to the voters ordinance No. C 10078. Thereafter, on May 13, 1949, the city commissioners of the city of Spokane passed a resolu-tion which notified all possessors or users of pinball ma-chines that they would be prosecuted. This action was then instituted.

Respondents maintain that the referendum petition, hav-ing been properly signed and filed, renders ordinance No. C 10078 ineffective unless and until it may be adopted by the people. Appellants, on the other hand, take the position that a pinball machine is a gambling device prohibited by the general laws of the state of Washington, and that neither the city commission nor the people of the city have the power to enact an ordinance in conflict with general laws of the state. As we understand them, they contend further that a defeat of ordinance No. C 10078 would, in effect, legalize the operation of pinball machines.

■ We agree that a city, regardless of the fact that its charter provides for a referendum, may not pass any or-dinance which puts into effect a law which is in conflict with the statutes of the state. Even a casual survey of the or-dinances, to which we have referred, brings to light the fact that the defeat of ordinance No. C 10078 would leave intact those ordinances of the city which legalize the owning and operating of pinball machines. The rule to which we have referred is laid down in Art. XI, § 10, of our state constitu-tion, where it provides:

" . . . cities or towns heretofore or hereafter organ-ized and all charters thereof framed or adopted by authority

of this constitution shall be subject to and controlled by general laws."

In *Neils v. Seattle*, 185 Wash. 269, 53 P. (2d) 848, this court said:

"A general law enacted by the legislature is superior to, and supersedes, all charter provisions inconsistent therewith."

The case of *Armitage v. Camden*, 5 N. J. Misc. 129, 135 Atl. 661, is so decisive of the question presented here that we quote it in full:

"PER CURIAM.

"This writ brings up for review a resolution of the board of commissioners of the city of Camden, passed August 12th, 1926, submitting to the legal voters of that city for their action, by approval or disapproval, a proposed ordinance permitting baseball games, either amateur or professional, on Sundays.

"There are several reasons argued why this resolution should be set aside, but the matter can be disposed of under a single one of these, and that is that no action taken or to be taken by the authorities of the city of Camden, or the legal voters thereof, in the face of an emphatic and positive legislative declaration of policy, can be effective. This is so fundamental that no citation of authorities is called for.

"The proposed ordinance, if adopted, would by its terms legalize acts in the city of Camden which the supreme law making body of the state has prohibited by that legislation known as the Vice and Immorality act.

"The resolution under review must therefore be set aside, with costs."

Among the decisions of this court lending support to this conclusion we note the following: *State ex rel. Seattle v. Carson*, 6 Wash. 250, 33 Pac. 428; *Benton v. Seattle Electric Co.*, 50 Wash. 156, 96 Pac. 1033; *State ex rel. Clausen v. Burr*, 65 Wash. 524, 118 Pac. 639; *Dolan v. Puget Sound Traction, Light & Power Co.*, 72 Wash. 343, 130 Pac. 353; and *Misich v. McGuire*, 24 Wn. (2d) 758, 167 P. (2d) 462, 171 P. (2d) 699.

Rem. Rev. Stat., § 2472 [P.P.C. § 116-129], provides:

"Possession of gambling devices. Every person who shall have in his possession or shall permit to be placed or

kept in any building or boat, or part thereof, owned, leased or occupied by him, any table, slot machine, or any other article, device or apparatus of a kind commonly used for gambling, or operated for the losing or winning of any money or property, or any representative of either, upon any chance or uncertain or contingent event, shall be guilty of a gross misdemeanor."

A city may enact ordinances for the punishment of offenses already made punishable by state law. *Seattle v. Chin Let,* 19 Wash. 38, 52 Pac. 324.

Is a pinball machine a gambling device?

It was stipulated during the trial that certain facts as alleged in the city's affirmative defense were true. That defense was as follows:

"The cabinets of said pinball machines have a flat horizontal top in the shape of a rectangular table, mounted upon a base, with one end of the table at a lower elevation than the other. The game is played on the top of said table by the use of a plunger which propels a metal ball to the top of said table, from which point the ball rolls to the lower end unless it falls into one of a number of holes in the surface of said table. There are four series of holes, numbered from 1 to 7, inclusive, which numbers correspond to numbers lighted on a backboard set above the high end of the table. The game is played by placing a nickel in a coin slot which causes a metal ball to drop into a receptacle from which receptacle it may be elevated to the playing surface of the board by the player, so that the ball is in a channel which extends the length of the right-hand side of said table and directly in front of the plunger. The insertion of the coin also causes one or several numbers of the backboard to light, and the object of the game is then for the player to put the metal ball into one of the holes on the table which corresponds with a number or numbers which may be lighted on the backboard. The insertion of the coin also indicates the odds which the player will receive in the event he is successful in putting the ball into a proper hole. The ball is shot by pulling the plunger back along a scale, marked by degrees, and then releasing the plunger. The distance from the ball at which the plunger is released determines the speed which the ball will have when propelled from the channel on the playing surface on the table. In addition to the holes on said table, there are metal springs and pins

at various places between the holes. If the player is successful in lodging the ball in a hole which corresponds to one of the numbers lighted on the backboard, the machine automatically returns to him the number of nickels shown in the list of odds on the backboard, and, if not successful in lodging the ball in one of said holes, he receives nothing."

It was further agreed in open court as follows:

". . . that said machines are so constructed that the lighted numbers on the back-board are determined and automatically lighted by the machine and the player has no choice in the selection thereof on the first coin but ultimately he may obtain the number which he desires to select by inserting additional coins until such number appears. Likewise, the odds which will be paid if the player is successful are automatically determined by the machine without any choice on the part of the player and all odds except the minimum odds to be paid are selected automatically by the machine. Said machines are so constructed that the pitch of the incline of the playing surface can be adjusted by the person having control of the machine but not the player, which pitch determines the speed of the ball as it travels downward over the playing surface."

We now call attention to cases from nineteen states of the Union which declare that pinball machines are gambling devices.

A great number of these cases may be found in 135 A. L. R. 149. Other cases are: *State ex rel. Dussault v. Kilburn*, 111 Mont. 400, 109 P. (2d) 1113, 135 A. L. R. 99; *State v. Wiley*, 232 Iowa 443, 3 N. W. (2d) 620; *Pepple v. Headrick*, 64 Idaho 132, 128 P. (2d) 757; *Kraus v. Cleveland*, 135 Ohio St. 43, 19 N. E. (2d) 159; *Approximately Fifty-Nine Gambling Devices v. People ex rel. Burke*, 110 Colo. 82, 130 P. (2d) 920; *People v. One Pinball Machine*, 316 Ill. App. 161, 44 N. E. (2d) 950; *Steely v. Commonwealth*, 291 Ky. 554, 164 S. W. (2d) 977; *Hunter v. Mayor and Council of Teaneck*, 128 N. J. L. 164, 24 A. (2d) 553; *Urban's Appeal*, 148, Pa. Super. Ct. 101, 24 A. (2d) 756; *State v. Betti*, 21 N. J. Misc. 345, 34 A. (2d) 91; *Steed v. State*, 189 Ark. 389, 72 S. W. (2d) 542; and *Prickett v. State*, 200 P. (2d) (Okla. Crim.) 457.

We shall content ourselves with referring to but one of the cases, and that one is the case of *State ex rel. Dussault*

*v. Kilburn, supra.* In that case, the pinball machine was described as

". . . a cabinet or stand about three and one-half or four feet high with a sloping plane or surface studded with small steel pins and containing holes. It has a catapult by the use of which a marble or ball is shot onto the plane with the object of having the ball enter one of the paying holes. To play the game a person places a nickel or a trade check in a slot in the machine. This places the marble or ball in a position for playing. The trade checks are redeemable in merchandise at the rate of 5 cents or more for each trade check as stamped on each at Kilburn's place of business, and not elsewhere. The machine is so constructed that the pay-off is in trade checks only and not in money. The number of checks received in the pay-off varies according to the hole in which the marble or ball falls. If the player is not successful in getting the marble into one of the proper holes, he receives nothing on the play. The marble or ball is shot from a spring or mechanical device. The power with which the ball is shot depends upon how far back the spring is pulled and, hence, is subject to the control of the player. . . .

" 'The board, in turn, has holes with numbers below the holes corresponding with the numbers that may be lighted on the back board; the lights naturally are operated from electrical spinners; the spinners turn and stop on certain switches that turn on certain lights on the back board; then the player must shoot the ball into a hole that corresponds with the light that is lit. The machine also has an electrical and mechanical pay-out mechanism that pays out trade checks, hickeys, etc. Well, after the coin is inserted in the slot that starts the machine in operation why there is a spinner or electrical disk, a disk with electrical fingers, or brass fingers, that turn on from an electrical motor, we might say a vibrator, and these fingers, in turn, stop on certain electrical switches that light corresponding numbers on the back board; there may be one light or up to seven, there are seven different characters, and from one to seven may be lighted on this particular operation; then in turn the player must shoot at the hole that corresponds with the number that is lighted in the back board."

In its determination that the machine was a gambling device, the court said:

"The question before us is whether the use of the machine

constitutes a nuisance under section 11124, Revised Codes. If its use constitutes gambling as defined by other sections, then the building in which it is used is a nuisance. Whether or not it is a gambling device depends upon section 11159, Revised Codes, as amended by Chapter 153, Laws 1937. That section makes it a misdemeanor for any person to conduct, run or operate 'any game of chance played with * * * any device whatsoever,' or to run or conduct or keep any slot machine, or other similar machine or device, for 'money, checks, credits, or any representative of value.' It provides, however, that certain types of business may procure a license to operate tables for the use and pleasure of their customers where certain games may be played for pastime and amusement 'and for the maintenance of which a charge may be made, to be paid by the users by the purchase of trade checks which must be redeemable in merchandise at the going retail price of such merchandise, which is the stock in trade of such business.' It also provides that upon the payment of a license, places of business may exhibit for use and sale to customers 'trade stimulators, such as pull boards and ticket boards, where each board so used returns to the owner or business not to exceed the going retail price of the goods disposed of and sold and disposed of through the use of the same.'

"The court was correct in holding that the device in question is condemned by Chapter 153. Machines of similar construction and operation have been held to be gambling devices. In *Howle v. City of Birmingham*, 229 Ala. 666, 159 So. 206, 209, the court in speaking of a machine not wholly dissimilar to that here said: 'The game is clearly a gambling contest with the owner and operator on the one side, and the members of the public on the other, who, while seeking a moment of diversion, are willing to hazard a nickel with the hope of winning three times that amount, and in which, as the facts alleged in the bill and the admitted facts show, the owner and operator hold the whip handle, and eventually win the stakes in the profits which the machine takes.' "

The court also quoted with approval from *State v. Coats*, 158 Ore. 122, 74 P. (2d) 1102, as follows:

" 'To say that the operation of pinball machines or slot machines involves any substantial degree of judgment or skill severely strains the credulity of any reasonable-minded person. Such machines are constructed to win, and they do win. In a game involving skill or judgment, the player has

a fair opportunity to win. Such opportunity is not afforded the player who "bucks" a slot machine or pinball machine. No judgment or skill which the player may exercise has any appreciable effect upon the result. \* \* \* It is perfectly obvious from the information that the only act which the player can, by possibility, perform to influence the result of this operation is to pull back the plunger a greater or lesser distance, and thereby, in its initial stages, regulate the speed of the ball. He can send the ball to the playing surface at greater or lesser speed, but he cannot guide or influence its course after it gets there. He cannot aim at anything, as in a game of billiards, or baseball, or golf, but is absolutely limited by the mechanics of the device to propelling the ball along the so-called channel to the upper end of the table.' "

■ Based upon these cases, we hold that the pinball machines named in the Spokane ordinance were gambling devices within the meaning of Rem. Rev. Stat., § 2472, and, as such, could not be legalized by either the city commissioners of the city of Spokane, or the people of that city acting in a legislative capacity.

■ Respondents contend that if this case is reversed, it should be sent back to the superior court for the purpose of taking additional evidence. We cannot so hold. The case was submitted to the court upon the stipulated facts. It was decided upon the facts. This court, hearing the cause *de novo*, decided the case upon those facts.

■ Respondents are of the opinion that Rem. Rev. Stat., § 2472, was, by implication, repealed by Rem. Rev. Stat. (Sup.), § 2472-1 [P.P.C. § 118-209]. We cannot yield our assent to that view. Repeals by implication are not favored. *Abel v. Diking & Drainage Imp. Dist. No. 4*, 19 Wn. (2d) 356, 142 P. (2d) 1017.

■ A reading of Rem. Rev. Stat. (Sup.) § 2472-1, in connection with other portions of chapter 119, p. 468, Laws of 1937, of which it is a part, indicates in unmistakable language that it had to do entirely with slot machines. With these considerations in mind, we hold that Rem. Rev. Stat., § 2472, was not repealed by the later act.

The argument has been made that, in the interest of local self-government, the ordinance should be submitted to the people of Spokane for their approval or rejection. The contention would be unanswerable were it not for the constitutional provision contained in Art. XI, § 10, and our laws as passed by the legislature. All acts of the people and their representatives, regardless of the virtue of those acts, must yield to the provisions of our constitution.

The judgment of the trial court is reversed, with instructions to dismiss the action.

ROBINSON, MALLERY, HILL, and HAMLEY, JJ., concur.

---

December 14, 1949. Petition for rehearing and request for stay of judgment denied.

